Case 1:15-cv-00209-TSE-MSN Document 2 Filed 02/18/15 Page 1 of 8 PageID# 38

ATTY Told To Notice

FILED

2015 FEB 18 P 2: 40

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOHN DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:15CV209 TSE /MSN |
| | ) |
| GEORGE MASON UNIVERSITY, BOARD OF VISITORS OF GEORGE MASON UNIVERSITY, BRENT ERICSON and JULIET BLANK-GODLOVE, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S MOTION FOR LEAVE TO PROCEED
UNDER PSEUDONYM AND FOR PROTECTIVE ORDER**

Plaintiff was expelled from George Mason University after being found responsible by an administrator for sexual misconduct – after having been found not responsible by another body at the University. This lawsuit challenges that finding and John Doe's expulsion as a violation of the United States Constitution, the Constitution of Virginia, Title IX, as well as alleging negligence against all Defendants. John Doe seeks to have the erroneous finding of responsibility erased from his education records and his expulsion reversed.

The background facts of this case could not be of a more sensitive and highly personal nature; therefore, John Doe requests leave to proceed under pseudonym and a protective order to protect his and his accuser's identities from the harm of having the most intimate aspects of their lives publicly broadcast.

**ARGUMENT**

Though there is a presumption of openness for judicial proceedings, the Fourth Circuit has held that, under appropriate circumstances, allowing a party to proceed anonymously may be

1

permitted. *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993) (explaining that "privacy or confidentiality concerns are sometimes sufficiently critical that parties or witnesses should be allowed" to proceed anonymously). In *James*, the Fourth Circuit provided district courts with five non-exhaustive factors to consider when a party requests to anonymity. Those factors are:

> Whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; the ages of the persons whose privacy interests are sought to be protected; whether the action is against a governmental or private party; and, relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

Id. (citations omitted).

In cases involving allegations of sexual misconduct, other courts in the Fourth Circuit have applied those five factors and granted the use of pseudonyms as necessary to protect the plaintiff. *See, e.g., Nelson v. Green*, No. 3:06-cv-00070, 2007 WL 984127 (W.D. Va. Mar. 28, 2007) (allowing plaintiff to litigate under a pseudonym where the case arose from allegations of sexual abuse of a child).

The court must "carefully review all the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *Doe v. Pittsylvania County, Va.*, 844 F.Supp.2d 724, 729 (W.D. Va. 2012) (citations omitted). Here, as in *Nelson*, the majority of the factors weigh in favor of anonymity.

*I. John Doe and His Accuser's BDSM Sexual Relationship is a Highly Personal and Sensitive Matter*

The underlying facts of this case revolve around Plaintiff's private life, including his participation in an alternative sexual relationship that is taboo to the majority of society. Specifically, both John Doe and Jane Roe participated in a BDSM relationship. That BDSM

relationship (or bondage and discipline, dominance and submission, sadism and masochism), and the assumptions society may make regarding it, should be treated similar to other alternative sexual relationship choices (like homosexuality and transexuality) that courts have said are deserving of protection. In addition, Plaintiff maintains that he is innocent of the sexual misconduct of which George Mason has found him responsible, and seeks to diminish the harm of that faulty determination and prevent associated future harms. Requiring Plaintiff to proceed under his real name will cause the exact harm Plaintiff hopes to alleviate and avoid.

Courts have permitted parties to proceed anonymously in cases involving alternative sexual relationships, including homosexuality, *see, e.g., Doe v. United Services Life Ins. Co.*, 123 F.R.D. 437 (S.D.N.Y. 1988), and transsexuality, *see, e.g., Doe v. Alexander*, 510 F. Supp. 900 (D.Minn.1981), *Doe v. McConn*, 489 F. Supp. 76 (S.D.Tex.1980), as well as many other cases involving highly personal and sensitive matters.[1] Just like homosexuality and transsexuality, a BDSM relationship is atypical to the majority of society. It is associated with sexual deviance— someone who is pushing limits—and that, unsurprisingly, creates an unease in many. The perceived harm the John Does faced in cases involving other alternative sexual lifestyles are the same harms John Doe faces here: social stigma and retaliation for his alternative sexual lifestyle. *See, e.g., United Services*, 123 F.R.D. at 439 (granting a request for anonymity there was a risk of social stigma to plaintiff if he was publicly identified as being a homosexual).

A BDSM-relationship—an alternative, sexual choice with which society may be uncomfortable—is no less personal or sensitive than homosexuality or transsexuality. Plaintiff's concerns go beyond the annoyance and criticism that may occur in any litigation; the concern

---

[1] *See, e.g., Roe v. Wade*, 410 U.S. 113 (1973) (abortion); *Poe v. Ullman*, 367 U.S. 497 (1961) (birth control); *Doe v. Mundy*, 514 F.2d 1179 (7th Cir.1975) (abortion); *Doe v. Harris*, 495 F. Supp. 1161 (S.D.N.Y.1980) (mental illness); *Doe v. Shapiro*, 302 F. Supp. 761 (D.Conn.1969) (welfare rights of illegitimate children), *appeal dismissed*, 396 U.S. 488, *reh'g denied*, 397 U.S. 970 (1970).

3

here is about putting on display Plaintiff's most intimate choices, providing a written depiction of his sexual life to be left in the public record for years to come.

When John Doe began his BDSM relationship with Jane Roe, he never imagined that the details of that relationship would be a matter of public record. And John Doe, like any reasonable person, wants to keep his private life just that: private. Unfortunately, Jane Roe's claims forced John Doe to talk about the most intimate aspects of his life in the campus disciplinary process. But even that process protected John Doe's privacy while adjudicating the claims.

Unfortunately, John Doe is left in a lose-lose situation: he can either file a lawsuit defending his rights and seeking a fair disciplinary process, which will put the intimate details of his sex life on display, or he can live with this erroneous mark on his transcript which brands him as a person who has committed a sexual assault and will prevent him from continuing his education. The entire purpose of bringing this lawsuit is to erase that scarlet letter from Doe's transcript; to ensure that he is not misbranded. But forcing him to proceed under his real name will cause that same harm, even if the result of his lawsuit is a reversal of the school's decision. The harm cannot be undone. Doe's name will be publicly associated with his BDSM relationship, an accusation of rape, and an ongoing requirement to explain away this entire legal nightmare (if he is even given that opportunity). The only way to protect John Doe, then, is to allow him to file pseudonymously.

Further, disclosure of John Doe's identity will make it relatively easy to identify Jane Roe.[2] George Mason refuses to consent to this motion—insisting that John Doe be forced to proceed under his real name—while simultaneously seeking to protect Jane Roe. This should not be allowed and the reasons why are clear: Jane Roe will face the same harms as John Doe if their

---

[2] Jane Roe previously filed for a protective order against John Doe. Once his name is known, it would be relatively straightforward to learn her name.

identities are revealed. But what the University fails to realize is that the protections they seek for Jane Roe will dissipate should John Doe be forced to proceed without a pseudonym.

Both John Doe and Jane Roe are college-aged students looking to enter the workforce or apply to graduate school. Should John Doe's motion to proceed under a pseudonym be denied, his name will be associated with both a sexual misconduct offense—which he has always maintained he did not commit—and intimate details about his sexual relationship with Jane Doe. The availability of that information creates more problems than just the social stigma both Doe and Roe would assuredly face; it would be available to the employers and admissions offices googling applicants Doe and Roe. This needless risk of harm is easily preventable, at no cost to the Defendants, by allowing both Doe and Roe proceed under pseudonyms.

To protect Doe and Roe from the social stigma, retaliation, and numerous other harms courts have linked to the public disclosure of a person's sexual identification—whether it be homosexuality, that a person is transsexual, or that a person likes BDSM sex—anonymity is necessary. This factor weighs heavily in favor of granting John Doe's motion.

## II. *Identification Could Pose Both Retaliatory Physical and Mental Harm to John Doe and Jane Roe*

Both John Doe and Jane Roe will face harm if John Doe is identified, including, but not limited to, physical retaliation and mental anguish. Just as harm could occur to a man being identified as homosexual because of average reader's association of AIDS to such behavior, *see Doe v. United Services Life Ins. Co.*, 123 F.R.D. 437, 439 (S.D.N.Y. 1988), John Doe faces harm from the average reader's inferences about his sexual preferences. He may be viewed as a womanizer. Readers may assume he is more likely to commit crimes. He will be seen as a deviant, someone who pushes boundaries. This would subject John Doe to harassment and ridicule from outsiders as well as personal embarrassment if his identity is revealed. His friends

may ostracize him when they learn of his sexual preferences. Employers may be wary of hiring someone accused of (and found responsible for) sexual misconduct, even if that accusation and finding are erroneous. And the nature of the crime—a campus sexual offense—makes retaliation against John Doe likely.

This potential for harm to Jane Roe, a non-party to the lawsuit, and John Doe weighs in favor of allowing John Doe to proceed anonymously.

### III. Doe and Roe Are Both College-Aged Students Looking to Enter the Workforce

Although both Doe and Roe were over 18 years old at the time of the underlying events, other age-related factors indicate that proceeding under a pseudonym would be appropriate. Both are college students on the brink of beginning their careers. Some courts have held that, despite reaching the age of majority, "college students may still possess the immaturity of adolescence," and being over 18 should not be held against the persons seeking anonymity. Yacovelli v. Moeser, No. 1:02CV596, 2004 WL 1144183, at *8 (M.D.N.C. May 20, 2004) (holding that plaintiffs' being over 18 "does not strongly favor either party"); but see Doe v. Merten, 219 F.R.D. 387, 393-94 (E.D. Va. 2004) (this factor weighed against anonymity where three of five plaintiffs were adults and the two minors were "on the verge of adulthood").

Neither Doe nor Roe likely entered the BDSM relationship expecting that the intimate details of that relationship would be available to the public, especially at a time when they are applying to graduate school or jobs. And if these potential schools and employers do their due diligence on the applicants, as one would hope, allegations of sexual misconduct revolving around a dominant-submissive relationship will show up in the search results, That John Doe and Jane Roe chose to partake in a BDSM sexual relationship should not be the first thing an admissions committee or future employer knows about them.

### IV. *The Action is Against Both Government and Private Parties*

Because the complaint alleges causes of actions against a government entity and two individuals in both their personal and official capacities, is, at worst, in equipoise, and, at best, favors anonymity. Generally, this factor aims to protect private parties from reputational harm, a harm that is much less of a concern when the lawsuit is against the government. Because John Doe's lawsuit includes allegations against Mr. Ericson and Ms. Blank-Godlove in their individual as well as official capacities, this factor breaks even. But the allegations arise from actions taken by two officials of a public university against a student of that school. There is certainly a public interest in state activity—particularly state activity that violates constitutional rights—and that public interest is advanced by the lawsuit proceeding, but not by knowing the names of Doe and Roe. No further identification—beyond knowing that Doe was a student at George Mason University—is necessary to apprise the public of the legal issues presented against a public university in the Commonwealth. At the very least, this factor is in equipoise, but, given that the lawsuit arises from Doe's expulsion from the University, this factor also favors anonymity.

### V. *There is Little Risk of Unfairness to the Defendants*

Allowing Mr. Doe to proceed under a pseudonym will not inhibit Defendants from defending the claims against them or present any other potential for unfairness. Each Defendant is well aware of John Doe and Jane Roe's identity, and knew of the impending lawsuit before it was filed. Further, the facts in the complaint are enough to make each Defendant aware of John Doe's true identity. In addition, undersigned counsel has spoken with counsel for George Mason University about this case using John Doe's true identity. Thus, there is exactly no difference in the Defendants' ability to defend themselves if John Doe proceeds under a pseudonym.

Indeed, the resolution of the legal issues in this case do not depend on the identification of John Doe. Instead, the question is whether John Doe's constitutional rights were violated by Defendants' failure to create and appropriately implement policies and procedures for sexual misconduct cases. Whether Defendants were negligent, violated the Constitution, or discriminated against John Doe in violation of Title IX, can be determined independently, without naming John Doe in court documents. The Defendants will not be inhibited in conducting their defense, obtaining discovery, or fighting at trial, even if John Doe is allowed to use a pseudonym.

This fact weighs in favor of granting John Doe's motion.

## CONCLUSION

Use of a pseudonym is necessary here to protect both Plaintiff and his accuser, who is not a party to this lawsuit, to preserve their privacy in a sensitive and highly personal matter. Affording Plaintiff that protection does not create any risk of unfairness to Defendants. John Does respectfully requests the ability to proceed under a pseudonym throughout this lawsuit.

DATED: February 18, 2015

/s/ *Allison Lansell*
Allison Lansell (Va. Bar No. 84087)
Matthew G. Kaiser*
Kaiser, LeGrand & Dillon PLLC
1400 Eye Street NW, Suite 525
Washington, DC 20005
(202) 640-2850
(202) 280-1034 (facsimile)
alansell@kaiserlegrand.com
mkaiser@kaiserlegrand.com

*Attorneys for Plaintiff John Doe*

*Pro hac vice* pending