**V I R G I N I A :**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

John Doe,                                                )
                                                         )
       Plaintiff,                                    )
                                                         )
v.                                                       )          Civil Action No.:1:15-cv-00209-TSE/MSN
                                                         )
The Rector and Visitors of George                       )
Mason University, Angel Cabrera,                         )
Brent Ericson, and Juliet Blank-Godlove                 )
                                                         )
       Defendants.                                   )

## MEMORANDUM OF POINTS AND AUTHORITES
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

      Defendants, The Rector and Visitors of George Mason University, Angel Cabrera, Brent Ericson and Juliet Blank-Godlove submit this brief in support of their Rule 12(b) motion to dismiss. Defendants respectfully request this Court to dismiss Plaintiff John Doe's Second Amended Complaint with prejudice for the reasons contained herein.

## STANDARD

      The facts set forth in the complaint must be assumed to be true in passing on a motion to dismiss for failure to state a claim. *Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir. 1969). Mere allegations that defendant violated particular laws is insufficient to survive a Rule 12(b)(6) motion. The allegations must be stated in terms that are neither vague nor conclusory. *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 220-21 (4th Cir. 1994). The court need not accept unsupported legal allegations or conclusory factual allegations devoid of any reference to actual events. *Brownscombe v. Dept. of Campus Parking*, 203 F. Supp. 2d 479, 481 (D. Md. 2002)

1

quoting *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989) and *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## ARGUMENT

### I.    MR. DOE HAS FAILED TO ADEQUATELY STATE A LEGALLY COGNIZABLE DUE PROCESS CLAIM UNDER COUNTS I, II AND III OF THE SECOND AMENDED COMPLAINT

To state a procedural due process claim, Mr. Doe must allege that: (1) he had a constitutionally cognizable life, liberty, or property interest; (2) Defendants deprived him of that interest; (3) and the procedures employed were constitutionally inadequate. *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013). Therefore, to state a claim for a violation of *substantive* due process, Mr. Doe must allege: (1) that he had property or liberty interest; (2) that the Defendants deprived him of this interest; and (3) that the Defendant's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency. *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 827 (4th Cir. 1995). At the very least, procedural and substantive due process claims share the element that the plaintiff had a constitutionally protected property or liberty interest at stake.

Mr. Doe's Second Amended Complaint is devoid of any reference to a source of a protected interest. Mr. Doe does not cite any state or federal code, constitutional reference or relevant case law to support his conclusory allegations of a protected property or liberty interest. Without reference to any source of law for these interests, Mr. Doe leaves the Defendants and this Court at a disadvantage to test the legal sufficiency of such a claimed constitutionally protected interest. It is plaintiff's burden to plead sufficient facts that demonstrate a constitutionally protected interest. *Whitehead v. Rozum*, 2010 U.S. Dist. LEXIS 102800 (W.D. Pa. Aug. 31, 2010) citing *Hewitt v. Helms*, 459 U.S. 460, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983); *Morrissey v. Brewer*, 408 U.S. 471,

92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972).  Mr. Doe has failed to carry his pleading burden in this case.

**A.  Mr. Doe must plead sufficient facts, that if taken as true, would demonstrate a legally cognizable, constitutionally protected property or liberty interest**

The Supreme Court addressed student due process claims against a public higher education institution in *Board of Curators, Univ. of Mo. v. Horowitz*, 435 U.S. 78, 91-92 (1978) and *Regents of the University of Michigan v. Ewing*, 474 U.S. 214 (1985). In both cases, the Supreme Court "assumed, without deciding," the existence of a constitutionally protected interest yet disposed of the case by finding the procedures employed by the institutions were constitutionally adequate.

Since *Ewing* and *Horowitz*, for a better part of the last 30 years, lower federal courts have adopted the "*assume, without deciding*" analysis when confronted with a student due process claim against a public college or university.  *Perez v. Tex. A & M Univ. at Corpus Christi*, 589 Fed. Appx. 244, 248 (5th Cir. Tex. 2014) *Hlavacek v. Boyle*, 665 F.3d 823, 825 (7th Cir. Ill. 2011) *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. Ark. 2007); *Amaechi v. Univ. of Ky.*, 2003 U.S. Dist. LEXIS 27231 (E.D. Ky. Sept. 30, 2003); *Amelunxen v. University of Puerto Rico*, 637 F. Supp. 426 (D.P.R. 1986).  Although federal courts were free to decide the first question (whether or not a constitutionally protected interest existed), most courts chose to adopt "*assume, without deciding*" analysis and disposed of the civil action in favor of the college or university by finding the process provided to the student was constitutionally adequate.

For good reason, this Court, the Fourth Circuit Court of Appeals and the Supreme Court has never reached such a conclusion with respect to Virginia public higher education students. *Davis v. George Mason Univ.*, 395 F. Supp. 2d 331 (E.D. Va. 2005) *aff'd* 93 Fed. Appx. 248 (4th Cir. Va. 2006) *cert. denied* 549 U.S. 1208 (U.S. 2007)*.* Accordingly, Mr. Doe is still required to plead facts that, if taken as true, would demonstrate a protected property or liberty interest.

*McCrary v. Ohio Dep't of Human Servs*., 2000 U.S. App. LEXIS 19212 (6th Cir. Ohio Aug. 8, 2000)(conclusory allegations regarding due process claim fail to state a claim upon which relief can be granted) *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981), aff'd, 460 U.S. 325, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983) (conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss.) *Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Authority*, 933 F.2d 853 (10th Cir. Okla. 1991) (conclusory factual allegations alone will be insufficient to survive a Rule 12(b) motion to dismiss). In short, Mr. Doe has failed to do so with respect to his Second Amended Complaint.

**B.  Mr. Doe failed to plead sufficient facts that, if taken as true, would demonstrate a constitutionally protected property interest**

The procedural component of the Due Process Clause does not protect everything that might be described as a "benefit": "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire" and "more than a unilateral expectation of it. He must, instead, have a legitimate claim of _**entitlement**_ to it." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (U.S. 2005) citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972)(Emphasis added.) In the context of a due process claim, property rights are created and defined by state law. *Stern v. Marshall*, 131 S. Ct. 2594, 2616 (U.S. 2011); *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164, 118 S. Ct. 1925, 141 L. Ed. 2d 174 (1998); *Huggins v. Prince George's County*, 683 F.3d 525, 536 (4th Cir. Md. 2012); *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 308 (4th Cir. W. Va. 2006).

For a procedural due process claim, it is the plaintiff's burden, not the defendant's or the Court's, to plead and prove the existence of a constitutionally protected property interest. *Raymond v. O'Connor*, 526 Fed. Appx. 526 (6th Cir. Ohio 2013) (Appellate court affirmed lower court's dismissal of due process claims on the grounds plaintiff failed to allege sufficient facts to support

a constitutional deprivation of a protected property or liberty interest.)  Although a court must treat the factual allegations in the complaint as true, the court need not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement," or accept "unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Moreover, as the Supreme Court recently held *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (U.S. 2009):

> [T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation"). Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. …Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not "show[n]"--"that the pleader is entitled to relief."

In a wholly conclusory fashion, Mr. Doe alleges that he has a constitutionally protected property interest in continuing his education at the University. Second Amended Complaint, ¶ 95. Mr. Doe does not reference any Virginia case, statute, or state constitutional provision that entitles, promises, guarantees or warrants his continued education at the University.  By providing only one legal conclusory allegation regarding his alleged property interest, Mr. Doe has failed to plausibly "show" he would be entitled to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (U.S. 2009). Without referring to any state law source, Mr. Doe expects this Court to take a blind leap of faith and assume the existence of property interest.  Not only would taking such an assumption in this case unnecessarily burden the Defendants and the Court's resources, it calls into question whether

or not the Court itself has Constitutional jurisdiction in deciding an "actual case or controversy." By assuming such a legal right in this case, the Court could be violating Article III, Section 2, Clause 1 of the U.S. Constitution.  In sum, Mr. Doe failed to sufficiently plead any non-conclusory facts, that if taken as true, could plausibly demonstrate a constitutionally protected property interest at stake in this case.

In addition, the "continued enrollment" theory has been fully considered and dismissed by both the Virginia Western and Eastern districts.   In 2006, this Court held there was not a constitutionally protected property interest in continued enrollment at the University. *Davis v. George Mason University*, 395 F. Supp. 2d 331 (E.D. Va. 2005).   In addition to the *Davis* case, this Court and the Western District have rejected the assumption that there is a property interest in continued enrollment at a public Virginia higher education institution.  *Kerr v. Marshall Univ. Bd. of Governors*, 2015 U.S. Dist. LEXIS 39313 (S.D. W. Va. Feb. 4, 2015)(plaintiff has not sufficiently rebutted the wealth of authority finding that there is no protected property interest in the continuation of academic endeavors); *Newby v. Bon Secours St. Francis Family Med. Residency Program*, 2014 U.S. Dist. LEXIS 153970 (E.D. Va. Sept. 22, 2014)(Continued placement in a graduate program does not constitute a recognizable property interest under the Fourteenth Amendment.); *Nofsinger v. Va. Commonwealth Univ.*, 2012 U.S. Dist. LEXIS 97857 (E.D. Va. July 13, 2012)( pleadings fail to identify a protected property interest, conclusory allegation that plaintiff "had a property interest in continued enrollment" was insufficient; she must point to some Virginia statute or rule showing that she has a "legitimate  claim of entitlement" to her continued enrollment in the graduate school program.); *McCoy v. E. Va. Med. Sch.*, 2012 U.S. Dist. LEXIS 25777 (E.D. Va. Feb. 28, 2012); *Nigro v. Va. Commonwealth Univ. Med. College of Va.*, 2010 U.S. Dist. LEXIS 56229 (W.D. Va. June 4, 2010).   The Commonwealth of Virginia

provides a multitude of benefits and entitlements for its citizens and residents. Even though entitlements could almost always be characterized as a "benefit," not all benefits can be said to be "entitlements" such that they deserve constitutional due process protection. Without more specific factual allegations, Mr. Doe has left the Defendants and the Court with no basis to test the legal sufficiency of his claim of entitlement as a constitutionally protected property interest. Accordingly, Mr. Doe's due process claim regarding an alleged constitutionally protected property interest should be dismissed.

### C. Mr. Doe failed to plead sufficient facts that, if taken as true, would demonstrate a constitutionally protected liberty interest

A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty," *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005). see, e.g., *Vitek v. Jones*, 445 U.S. 480, 493-494, 63 L. Ed. 2d 552, 100 S. Ct. 1254 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution), or it may arise from an expectation or interest created by state laws or policies, see, e.g., *Wolff v. McDonnell*, 418 U.S. 539, 556-558, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits). Rather, the Due Process Clause protects only those interests to which an individual has a "legitimate claim of entitlement." *Burnette v. Fahey*, 687 F.3d 171, 181 (4th Cir. Va. 2012). The entitlement analysis is the same for liberty interests as it is for property interests. *Toney v. Owens*, 779 F.3d 330, 342 (5th Cir. Tex. 2015); *United States v. Klein*, 589 Fed. Appx. 909, 911 (10th Cir. 2014); *Antia-Perea v. Holder*, 768 F.3d 647, 660 (7th Cir. 2014); *Henderson v. Simms*, 223 F.3d 267, 274 (4th Cir. Md. 2000).

Mr. Doe alleges he has constitutionally protected liberty interest in his good name, reputation, honor, and integrity. Second Amended Complaint, ¶ 93. Mr. Doe also alleges he has a protected liberty interest in pursuing his education, as well as future educational and employment

7

opportunities.  *Id.*, ¶ 94.  Again, Mr. Doe presents only conclusory allegations without specifying the source of the entitlement from either the United States Constitution or state law. If such conclusory statements are all that is required to satisfy the pleading standard established in *Iqbal* *<u>every</u>* adverse action or decision[1] by a state actor could be a potential basis for civil litigation, the early of which would not end until the expensive and burdensome discovery stage is completed. Without any more detail about the source of his purported liberty interest, Mr. Doe is, once again, asking the Court to take a blind leap of faith and assume there is a protected interest in this case. Given that the U.S. Constitution and state laws are open public sources, Mr. Doe had no impediment in articulating the constitutional provision or state law that created his alleged protected liberty interests. Quite simply, there is no *general* liberty interest in being free of even the most arbitrary and capricious government action and Mr. Doe has failed to plead facts in this case to support his claim of a protected liberty interest.  *Hawkins v. Freeman*, 195 F.3d 732, 749 (4th Cir. N.C. 1999).

### D. Mr. Doe has failed to plead sufficient facts that, if taken as true, would demonstrate a substantive due process claim

Mr. Doe must demonstrate (1) that he had a constitutionally protected interest at stake; (2) that the Defendants deprived him of this interest; and (3) that the Defendants' actions falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 827 (4th Cir. 1995).[2]

---

[1] By disregarding the plausible pleading standard in *Iqbal*, Mr. Doe could sue the University and other governmental agencies for almost anything.  For example, Mr. Doe could sue any state university that rejects his application for enrollment and matriculation by just reiterating paragraphs 91 and 94 of the Second Amended Complaint.

[2] While liberty interests entitled to procedural due process protection may be created by state law as well as the Constitution itself, those entitled to substantive due process protection (whatever the procedures afforded) are 'created only by the Constitution. *Hawkins v. Freeman*, 195 F.3d 732, 748 (4th Cir. 1999) (quoting *Regents of Univ. of Mich. v. Ewing, 4*74 U.S. 214, 229, 106 S. Ct. 507, 88 L. Ed. 2d 523 (1985)

Mr. Doe claims the constitutionally protected interest at stake for his substantive due process claim is Mr. Doe and Ms. Roe's "right, as consenting adults, to decide the meaning of their sexual relationship and set its boundaries." Second Amended Complaint, ¶ 118. In support of his allegation, Mr. Doe cites *Lawrence v. Texas*, 529 U.S. 558 (2003) and *Moore v. City of East Cleveland,* 431 U.S. 494 (1977).[3]

Reliance on both cases are misplaced as they both involved a direct attack on the constitutionality of a state or city law, whereas Mr. Doe's present case is collaterally attacking the University's specific and adverse decision with respect to violations of a student code of conduct. Moreover, the plaintiff in *Lawrence* involved the criminalization of homosexual sexual relationships whereby potential criminal sanctions, including incarceration, were at risk for the claimants. Any involuntary incarceration will almost always touch upon a person's inalienable right of liberty. *Zadvydas v. Davis*, 533 U.S. 678, 690, 150 L. Ed. 2d 653, 121 S. Ct. 2491 (2001) ("freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the due process] clause protects"). Mr. Doe was expelled from the University, he wasn't confined, imprisoned or even briefly detained against his will. At issue in *Moore*, was a city ordinance limiting the occupancy of a home to single family, where family was narrowly defined by the ordinance. Plaintiff in *Moore* was subject to categorization of a second grandchild as an illegal occupant and not part of a single family definition. The Supreme Court noted "Our decisions establish that the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's

---

[3] Even though Lawrence and Moore only referred to the purported entitlements as protected *liberty interests*, it is unclear from the Second Amended Complaint which protected interests (or both) Mr. Doe is claiming pursuant to his substantive due process claim. To the extent Mr. Doe is alleging a property interest substantive due process claim, the Defendants reincorporate their arguments supra, that Mr. Doe has failed to sufficiently plead plausible property interest.

history and tradition." *Id.* at 503. Given Mr. Doe and Ms. Roe were not seeking to maintain the

sanctity of family with respect to their relationship, it is unclear how the case is relevant to Mr.

Doe's substantive due process claim.

As stated by Justice Powell in his concurring opinion:

> Even if one assumes the existence of a property right, however, not every
> such right is entitled to the protection of substantive due process. While property
> interests are protected by procedural due process even though the interest is derived
> from state law rather than the Constitution, substantive due process rights are
> created only by the Constitution. The history of substantive due process "counsels
> caution and restraint." Moore v. East Cleveland, 431 U.S. 494, 502 (1977) (opinion
> of POWELL, J., for a plurality). The determination that a substantive due process
> right exists is a judgment that "certain interests require particularly careful scrutiny
> of the state needs asserted to justify their abridgment." Ibid., quoting Poe v. Ullman,
> 367 U.S. 497, 543 (1961) (Harlan, J., dissenting). In the context of liberty interests,
> this Court has been careful to examine each asserted interest to determine whether
> it "merits" the protection of substantive due process. See, e. g., East Cleveland,
> supra; Roe v. Wade, 410 U.S. 113 (1973); Griswold v. Connecticut, 381 U.S. 479
> (1965). "Each new claim to [substantive due process] protection must be considered
> against a background of Constitutional purposes, as they have been rationally
> perceived and historically developed." Poe, supra, at 544 (Harlan, J., dissenting).
> The interest asserted by respondent -- an interest in continued enrollment
> from which he derives a right to retake the NBME -- is essentially a state-law
> contract right. It bears little resemblance to the fundamental interests that
> previously have been viewed as implicitly protected by the Constitution. It certainly
> is not closely tied to "respect for the teachings of history, solid recognition of the
> basic values that underlie our society, and wise appreciation of the great roles that
> the doctrines of federalism and separation of powers have played in establishing
> and preserving American freedoms…

*Regents of University of Michigan v. Ewing*, 474 U.S. 214, 229 (U.S. 1985).  Although

criminal statutes prohibiting pre-marital fornication have been dormant and antiquated for

sometime now, it is illogical and counterintuitive to suggest Mr. Doe and Ms. Roe's (two

unmarried adults) right to define the meaning of their sexual relationship and set its boundaries is

"deeply rooted in this Nation's history and tradition," particularly where Virginia only recently

struck down its fornication law in 2005.  *Martin v. Ziherl*, 269 Va. 35 (Va. 2005).

In addition, according to his complaint, Mr. Doe and Ms. Roe had already ended their relationship when she first submitted a complaint with the University's Office of Student Conduct. Second Amended Complaint, ¶ 32, 41-49. Assuming *arguendo* Mr. Doe has plead the existence of a constitutionally protected liberty interest, or fundamental right, Mr. Doe still has failed to plead a plausible claim under the "deprivation of such interest" element. Mr. Doe has not plead any facts that could demonstrate a deprivation of his liberty interest to "define the meaning of [Mr. Doe and Ms. Roe's] relationship and set its boundaries."  In other words, the purported liberty interest was voluntarily extinguished by Mr. Doe and Ms. Roe prior to any possible deprivation of such interest by the Defendants.  Without any allegation Mr. Doe and Ms. Roe plan on resuming their relationship, or an allegation that other actions taken by the Defendants lead to the end of Mr. Doe and Ms. Doe's relationship, Mr. Doe has failed to present a plausible claim of substantive due process. Simply put, the Defendants cannot deprive a liberty interest that Mr. Doe no longer possesses. Accordingly, the substantive due process claim should also be dismissed. Finally, even if Mr. Doe has alleged a fundamental right, Mr. Ericson and Ms. Blank-Godlove's decision can hardly be said to "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999)

**E. The Virginia Constitution claims of due process are coextensive with the United States Constitution claims.**

Mr. Doe has alleged a procedural due process claim under both the United States Constitution and the Virginia Constitution. On the federal side, Mr. Doe alleges violation of Section 1 of the Fourteenth Amendment which provides:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

11

Article 1, Section 11 of the Virginia Constitution provides "That no person shall be deprived of his life, liberty, or property without due process of law…"

The Due Process protections under the Virginia Constitution are the same as the protections under the U.S. Constitution. *Koroma v. Richmond Redevelopment & Hous. Auth.*, 2010 U.S. Dist. LEXIS 41073 (E.D. Va. Apr. 27, 2010) *Shivaee v. Commonwealth*, 270 Va. 112, 613 S.E.2d 570, 574 (Va. 2005) (citing *Morrisette v. Commonwealth*, 264 Va. 386, 569 S.E.2d 47, 53 (Va. 2002) (citing *Willis v. Mullett*, 263 Va. 653, 561 S.E.2d 705, 708 (Va. 2002)). Because Virginia courts have consistently held that the protections afforded under the Virginia Constitution are co-extensive with those in the United States Constitution, the Court should analyze Count III under the same framework as it does Count I. *Caprino v. Commonwealth*, 53 Va. App. 181, 670 S.E.2d 36, 38 n.1 (Va. Ct. App. 2008). Accordingly for the same reasons discussed *supra*, the Court should dismiss Mr. Doe's Virginia Constitution claim in Count III.[4]

## II.   MR. DOE HAS FAILED TO STATE A FREE SPEECH CLAIM UPON WHICH RELIEF CAN BE GRANTED

Mr. Doe alleges he engaged in protected speech by text messaging Ms. Roe and stating he would "get a gun and shoot himself in the chest" if Ms. Roe did not respond to his messages by the end of the day. Second Amended Complaint, ¶ ¶ 131, 136. Mr. Doe further alleges that Mr. Ericson punished Mr. Doe for the speech. *Id.*, ¶ 136. Although not entirely clear, Mr. Doe's First Amendment free speech claim is most closely analogous to First Amendment freedom of speech retaliation claim. A plaintiff seeking to assert a § 1983 claim on the ground that he experienced

---

[4] Claims based on Virginia's Constitution are not actionable by way of § 1983 which is available only to redress violations of federal constitutional or statutory rights. *Koroma v. Richmond Redevelopment & Hous. Auth.*, 2010 U.S. Dist. LEXIS 41073 (E.D. Va. Apr. 27, 2010). Accordingly, this brief only addresses a federal substantive due process claim, as it doesn't appear Mr. Doe has alleged a substantive due process claim based on the Constitution of Virginia.

government retaliation for his First Amendment-protected speech must establish three elements: (1) his speech was protected, (2) the "alleged retaliatory action adversely affected" his protected speech, and (3) a causal relationship between the protected speech and the retaliation. *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685-86 (4th Cir. 2000).

### A.  Mr. Doe has failed to sufficiently allege he engaged in protected speech

The First Amendment does not does not protect a true threat, "a statement that a reasonable recipient would have interpreted as a serious expression of an intent to harm or cause injury to another." *Doe v. Pulaski County Special Sch. Dist.*, 306 F.3d 616, 624 (8th Cir. 2002) (en banc). As held in *Doe,* the Eighth Circuit noted that in the wake of Columbine and Jonesboro," we expect reasonable school officials to take "some action based on . . . violent and disturbing content." *Id.* at 626 n.4.  After *Doe*, the Virginia Tech tragedy occurred and added college campuses to the unfortunate list of places where random acts of senseless violence on a grand scale could be carried out by single person armed with a firearm. In the current unfortunate climate, school administrators must be permitted to react quickly and decisively to address a threat of physical violence against their students, without worrying that they will have to face years of litigation second-guessing their judgment as to whether the threat posed a real risk of substantial disturbance.); *Pulaski Cnty. Special Sch. Dist.*, 306 F.3d at 626 n.4. See *Riehm v. Engelking*, 538 F.3d 952 (8th Cir. Minn. 2008)(holding students threat to murder his teacher and commit suicide was a true threat); *LaVine v. Blaine Sch. Dist.*, 257 F.3d 981, 983, 987, 992 (9th Cir. 2001)( school did not violate a student's First Amendment's rights when it expelled him for his poem filled with imagery of violent death and suicide and shooting of fellow students).

Mr. Doe lived on campus in a University dormitory in which other University students lived. Second Amended Complaint, ¶  50.  Mr. Doe, like most students living on campus, had a

roommate. *Id.*, ¶ 35. In his March 2014 text message to Ms. Roe during the Spring semester, Mr. Doe stated that he would "get a gun and shoot himself in the chest" if Ms. Roe did not return his messages. *Id.*, ¶¶ 130-131.  The firing of a gun inside of dormitory room could not only strike Mr. Doe's roommate, but also other students in neighboring dormitory rooms.[5]  Mr. Doe's text message was a true threat and, accordingly, not protected speech.

In addition, "conduct by the student, in class or out of it, which for any reason-- whether it stems from time, place, or type of behavior--materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (U.S. 1969) *Id*. at 513.   In the wake of the Virginia Tech tragedy, the General Assembly passed legislation mandating public institutions of higher education to select a threat assessment team and determine potential threats and responses to such threats.  The preliminary assessment and ongoing management of such threats not only forces the institution to expend resources in managing such cases, each new case may interfere with the ability of the team to effectively manage current threat cases. Violent threats to self are considered by such threat assessment teams. Va. Code § 23-9.2:10 (E.). Such threats by themselves cause substantial disruption within the learning environment of a University.  To argue after the fact in his complaint that such text message was isolated and trivial speaks not only to fact that his speech clearly falls out of the category of speech the First Amendment is aimed at protecting (government dissent, political viewpoint, social commentary), but that such speech is more akin to an immature moviegoer screaming "FIRE" in a crowded theater and enjoying the panic of fellow movie patrons run and stumble for the exits while

---

[5] In addition, it is not unreasonable to speculate that someone with a gun planning on committing suicide may attempt to harm not only the recipient of the threat but others who might be in proximity to the person threatening suicide.

continuing to eat his popcorn.  If Mr. Doe was serious in his threat, he has shown the propensity of not only harming himself but others nearby him, such as University students.  If Mr. Doe was being "trivial" as he alleged in ¶ 134, the Defendants and the taxpayers shouldn't be forced to pay twice for the boy who cried wolf and allow this baseless free speech claim to continue into discovery.

### B.  Mr. Doe has failed to sufficiently plead the expulsion adversely affected his constitutional rights of free speech

In a retaliation action alleging First Amendment violations, a plaintiff must show that the conduct complained of adversely affected his constitutional rights. *ACLU v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993). It is insufficient to show a defendant's conduct caused a mere inconvenience. *Id*. at n.6. Moreover, the plaintiff must allege specific facts supporting the claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension. *Adams v. Rice*, 40 F.3d 72, 74-75 (4th Cir. N.C. 1994).

Mr. Doe has not alleged his speech has been chilled or that he no longer feels comfortable texting other people that do not return his messages.  More importantly, his communication with Ms. Roe in general was already completely frozen by court order prior to the University bringing the disciplinary charges against Mr. Doe.  Second Amended Complaint, ¶  48.  In short, the University cannot chill speech that was already chilled by a court order.   In addition, it is axiomatic that once expelled any future communications by Mr. Doe were beyond the purview of the University thereby extinguishing any chilling effect on Mr. Doe's conduct, including his communications with others.

### C.  Mr. Doe has failed to sufficiently plead but for the substance of the text Mr. Ericson would not have found Mr. Doe responsible for violating the Student Code of Conduct nor would he have expelled Mr. Doe

The Fourth Circuit's causal requirement is "rigorous." *Huang v. Bd. of Governors of the Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir. 1990). "[I]t is not enough that the protected expression played a role or was a motivating factor in the retaliation; claimant must show that 'but for' the protected expression the [state actor] would not have taken the alleged retaliatory action." *Id.*  Mr. Doe has failed to allege Mr. Ericson would have not found Mr. Doe responsible for violating the Student Code of Conduct, but for the particularized message he sent to Ms. Roe.  Mr. Doe himself admits the message was genuinely trivial, and thus did not import any substantive message or viewpoint. Mr. Doe appears to admit the finding of sexual misconduct was the prevalent reason for his expulsion.  Second Amended Complaint, ¶ 187.  In addition, Mr. Doe fails to allege that if it were not for Mr. Ericson finding Mr. Doe's text message violated the Student Code of Conduct, Mr. Doe would not have been expelled.  In sum, Mr. Doe fails to sufficiently plead a freedom of speech retaliation claim upon which relief can be granted.

### III.    Mr. Doe's state law negligence claims in Count V, VI and VII fail as a matter of law

Mr. Doe alleges against all Defendants that the Defendants owed Mr. Doe a duty to exercise reasonable care with respect to the University's procedures, and that the Defendants breached that duty by not acting with ordinary care with respect to those procedures and as proximate cause of Defendants' negligence, Mr. Doe suffered damages.  Second Amended Complaint ¶¶ 140-144, Count V.  Mr. Doe similarly alleges that the University and President Cabrera owed Mr. Doe a duty to exercise reasonable care in the hiring, training and supervision of Mr. Ericson and Ms. Blank-Godlove, that the University and President Cabrera breached that duty, and as proximate cause of the their negligence, Mr. Doe suffered damages. *Id.*, ¶¶ 147-153,  Count VII.

The Virginia Supreme Court has said negligence is not actionable unless there is a legal duty, a violation of the duty, and consequent damage. *Marshall v. Winston*, 239 Va. 315, 318, 389

16

S.E.2d 902, 904, 6 Va. Law Rep. 1518 (1990). Counsel is unaware of any Virginia cases where a Virginia court recognized a legal duty of ordinary care owed by a university and its employees to a student in the context of a student disciplinary proceeding. Mr. Doe's lawsuit is a collateral attack on the University's decision to expel him based upon the University's Code of Conduct. A legal duty to act with reasonable or ordinary care does not simply arise when a university interprets and applies its own policies. In addition, the fact that the University adopted a policy such as Code of Conduct, and hired, trained and supervised employees to interpret and apply such a policy does not create a recognized Virginia common law cause of action based on negligence. To support a negligence claim under Virginia law, "there must be a legal duty, a breach thereof, and a consequent injury which could have been reasonably foreseen by the exercise of reasonable care and prudence." *Jordan v. Jordan*, 220 Va. 160, 162, (1979). As noted in *McFadyen v. Duke Univ.*, "the university-student relationship does not impose an actionable duty of care on administrators or advisors in the discharge of their academic functions." *McFayden v. Duke Univ*., 786 F. Supp. 2d 887, 998 (M.D.N.C. 2011), rev'd in part on other grounds, 703 F.3d 636 (4th Cir. 2012). Courts dismiss negligence claims where the plaintiff does not articulate a particularized standard of care or provide the legal authority from which the purported legal duty arises. See e.g., *Keerikkattil v. Hrabowsi*, Civil Action WMN-12-2016, 2013 WL 5368744, *9 (D. Md. Sept. 23, 2013) (dismissing negligence action where the plaintiff failed to allege a specific standard of care during misconduct hearings, holding, inter alia, that purported violations of Title IX cannot form the basis of a negligence action); *DeCecco v. Univ. of South Carolina*, 918 F. Supp. 2d 471, 502 (D.S.C. 2013) (dismissing negligence claim against university because the plaintiff failed to articulate the university's legal standard of care in sexual assault investigations). As such, Plaintiff has failed to properly plead a negligence claim under Counts V and VI.

Mr. Doe also alleges against all Defendants that because they failed to abide by the Office of Civil Rights Division of the Department of Education guidelines and Title IX regulations, they have effectively committed negligence per se.  Second Amended Complaint, ¶¶ 156-170, Count VII.  Negligence per se claims in Virginia only been extended to statutes enacted for public safety. *Halterman v. Radisson Hotel Corp*., 259 Va. 171. The cited guidelines and requirements of Title IX are not related to any specific safety standard which is where negligence per se claims are recognized.   Further, the requirements cited might be aimed at, among other things, increasing safety on campuses, how each institution meets such requirements is entirely left up to the institution, therefore, Mr. Doe negligence per se claim simply fails.

## IV.    MR. DOE HAS FAILED TO PLEAD SUFFICIENT FACTS TO PLAUSIBLY STATE A TITLE IX VIOLATION

As the Supreme Court held in *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009). As the Supreme Court held in *Iqbal:*

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"….. In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.
> *Id*. 678-680.

In Iq*bal*, the Supreme Court determined the claim at issue presented nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim based on his

religion, race and/or national origin. *IIqbal,* at 680-681. Such conclusory allegations were not entitled to be assumed as true. *Id*. The Supreme Court held that even though the complaint contained conclusory allegations, it did not contain any factual allegation sufficient to plausibly suggest petitioners' discriminatory state of mind. His pleadings thus do not meet the standard necessary to comply with Rule 8. *Id*. at 683.

Since *Iqbal*, courts have required Title IX plaintiffs to plead sufficient facts, rather than conclusory allegations, that could plausibly demonstrate a discriminatory animus towards gender. *Pungitore v. Barbera*, 506 Fed. Appx. 40 (2d Cir. 2011) (plaintiff's Title IX claim dismissed based entirely on conclusory allegations without alleging any specific facts to demonstrate discriminatory animus); *Sterrett v. Cowan*, 2015 U.S. Dist. LEXIS 13056 ( E.D. Mich. Feb. 4, 2015). With respect to Mr. Doe's Title IX claim, to establish discriminatory animus, Mr. Doe relies entirely on the allegation that Mr. Ericson made the wrong decision in the face of overwhelming evidence to the contrary. Second Amended Complaint, ¶ 184.

What Mr. Doe fails to appreciate is that there are equal number of other potential explanations for a wrong decision even if you assume Mr. Ericson made an error with his decision to begin with.  Without more specific facts alleging a discriminatory motive towards males or even specific facts that could allow the court to infer such a motive, Mr. Doe has failed to sufficiently plead a plausible claim for relief under Title IX. *HB v. Monroe Woodbury Cent. Sch. Dist.*, 2012 U.S. Dist. LEXIS 141252 (S.D.N.Y. Sept. 27, 2012)(Title VI claim dismissed where defendants were not alleged to have made any racially-tinged comments, referenced Plaintiffs' race, or treated Plaintiffs differently from people outside their protected class.)  In addition, Mr. Ericson, a male himself, undermines any blanket inference that his adverse decision was based on Mr. Doe's gender. *White v. Pacifica Found*., 973 F. Supp. 2d 363, 380 (S.D.N.Y. 2013) ("Although [t]he

Supreme Court has rejected any conclusive presumption that an employer or, presumably, his agents, will not discriminate against members of their own race or gender[,] . . . the fact that both [plaintiff] and [decision-maker] are African-American undermines any possible inference of discriminatory animus.")

Mr. Doe places the usual discrimination buzz-words of "disparate impact" and "deliberate indifference" in his Title IX claim. Second Amended Complaint, ¶¶ 185, 191. These allegations are not based on any specific facts of this case and made entirely from whole cloth. "Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim for relief." *Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. Ind. 2014). Mr. Doe fails to allege that female students accused of sexual misconduct are treated differently than male students accused of sexual misconduct. Instead, he states that because the procedures of the University are inherently unfair, and because most accused of sexual misconduct are male, there is a disparate impact against the gender. Disparate treatment or impact claims entail the comparative treatment of the plaintiff's protected class to others in similarly situated positions. Mr. Doe needed to address the disparate treatment of similarly situated classes outside of his protected class, not the inherent unfairness of a process itself. *King v. DePauw Univ.*, Civil Action No. 2:14-cv-70, 2014 WL 4197507, at *10 (S.D. Ind. Aug. 22, 2014). In addition, Mr. Doe does not allege how the University's appellate procedures have resulted in a discriminatory disparate impact against males and subsequently himself. The appeal procedures are the same for complainants and respondents, regardless of sex. Without explaining what procedure has discriminatory disparate impact, Mr. Doe has failed to sufficiently allege Title IX claim. Finally, its not clear what the Defendants purportedly *know* to be true with respect to disparate impact nor has Mr. Doe alleged when the Defendants became aware of such disparate

impact and for how long the Defendants have been "deliberately indifferent."  Accordingly, Mr.

Doe's Title IX claim fails under *Iqbal*, a disparate treatment or deliberate indifference theory.

## V.   MR. DOE'S EQUAL PROTECTION CLAIM FAILS AS A MATTER OF LAW

For the essentially the same reasons argued with respect to Mr. Doe's Title IX claim, Mr.

Doe's equal protection claim also fails to state a claim upon which relief can be granted. In order

to survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to

demonstrate plausibly that he was treated differently from others who were similarly situated and

that the unequal treatment was the result of discriminatory animus. *Morrison v. Garraghty*, 239

F.3d 648, 654 (4th Cir. 2001); see also *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560-61, 127

S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Equity in Ath., Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th

Cir. Va. 2011).

Again, Mr. Doe is simply arguing in his complaint that the decision by Mr. Ericson was

wrong and therefore it *had* to be based on discriminatory animus. As the court stated in *Mallory*,

"one case by an individual who was subjectively dissatisfied with a result does not constitute a

'pattern of decision-making'. . . as a basis for finding [gender] bias." *Mallory v. Ohio Univ.*, 76

Fed. Appx. 634, 640 (6th Cir. Ohio 2003); see also *Doe v. Univ. of the South*, 687 F. Supp. 2d 744,

756 (E.D. Tenn. 2009). In addition, what Mr. Doe fails to appreciate is that none of the claims he

has presented in his complaint will entitle him to a "correct" decision, whatever that may be in this

case.  At most, assuming some of his claims will move into discovery, the end result for Mr. Doe

will at most be a new hearing that meets due process standards that is free from discriminatory

animus. The University could very well reach the same result as Mr. Ericson's decision in the new

hearing.  If so, Mr. Doe would be in the same position as he is today under his theory of pleading

an equal protection claim.  There mere alleged fact that Mr. Ericson made the wrong decision does

not establish discriminatory motive under a claim for equal protection, otherwise, Mr. Doe could take successive litigation until he reached the result he desires: a favorable decision from the University. In short, Mr. Doe has failed to plead any facts that plausibly could support even an inference of discriminatory intent on part of the Defendants. Mr. Doe's equal protection claim should be dismissed.[6]

## VI.   IN THE ALTERNATIVE, SOME OF THE DEFENDANTS ARE IMPROPERLY NAMED TO CERTAIN COUNTS

Under *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989), states and their agencies are not considered "persons" under 42 USC § 1983. Accordingly, the University must be dismissed as named defendant for Counts I, II, IV and IX, assuming in the alternative such counts survive Defendants' motion to dismiss.

President Cabrera should be dismissed from the 42 USC § 1983 claims, in the alternative, assuming they survive the motion to dismiss. Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each government official has violated the Constitution through his own individual actions. *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 71 (3d Cir. 2011). A supervisor can be held liable through direct supervisor action or "actual knowledge and acquiescence" to constitutional violations. *Id.* at 72. Mr. Doe has failed to plead any factual allegations that would impute liability to President Cabrera for Counts I, II, IV and IX. It is also unclear how President Cabrera is tied to Count III, V, VII and X.  Accordingly, President Cabrera should be dismissed from such claims. In addition, there is no individual liability under Title IX. Accordingly, Defendant Cabrera should be dismissed from Count VIII. Most courts that have addressed the issue of individual liability under Title IX have determined there is no such liability.

---

[6] In addition, as stated above, Virginia Constitution claims are coextensive with the United States Constitution claims. Accordingly, for the same reasons, Mr. Doe's Count X – Violation of the Equal Rights Clause of the Virginia Constution should be dismissed.

*Petrone v. Cleveland State Univ.*, 993 F. Supp. 1119, 1125 (N.D. Ohio 1998); *Emerson v. Thiel College* 296 F.3d 184 (3rd. Cir. 2002) *Romero v. City of New York*, 839 F. Supp. 2d 588 E.D. N.Y. 2012.

Because an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity, the Eleventh Amendment provides immunity when state officials are sued for damages in their official capacity. *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007); *Tigrett v. Rector & Visitors of the Univ. of Va.*, 290 F.3d 620, 626 (4th Cir. Va. 2002). However, Mr. Doe may sue state employee in their personal capacities for prospective injunctive relief. Id. Accordingly, President Cabrera, Ms. Blank-Godlove and Mr. Ericson should be dismissed from Counts I, II, IV and IX in their named official capacities.  In addition, any relief beyond prospective injunctive relief for these claims must be stricken.

## VII.   IN THE ALTERNATIVE, MS. BLANK-GODLOVE AND MR. ERICSON ARE ENTITLED TO QUALIFIED IMMUNITY

In the alternative, assuming the Defendants' motion to dismiss is not granted for the reasons above, Ms. Blank-Godlove and Mr. Ericson should be dismissed from Counts I, II, IV and IX under the doctrine of qualified immunity.   Determining whether or not the qualified immunity doctrine applies entails a two-step analysis, assessing (1) "whether the facts that make out a violation of a constitutional right," and, if so, (2) "whether the right was clearly established at the time of alleged adverse action. See *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

With respect to Mr. Doe's due process claims, it is highly questionable whether or not there is a constitutionally protected interest at stake in this case.  In addition, most of the relevant cases affirmed the decisions stating that the institution's procedures met constitutional due process

23

requirements.   As the Supreme Court recognized in *Horowitz,* all that *Goss* required was an "informal give-and-take" between the student and the administrative body dismissing him that would, at least, give the student "the opportunity to characterize his conduct and put it in what he deems the proper context." *Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78, 86 (U.S. 1978). In this context, it cannot be said the fact that Mr. Ericson reversed the factual finding of hearing panel and issued  sanction of expulsion was an action that was "clearly established" by case law as unconstitutional. It also doubtful that Mr. Doe had a fundamental right at stake for his substantive due process claim.

For his first amendment claim, given Mr. Doe's text message was of no political, social, religious, artistic expression, it cannot be said as a matter of law, his expression was protected speech, or that it was clearly established by law his text message was protected speech.

Similarly, with respect to his equal protection claim, it is doubtful Mr. Doe can make the argument under any set of facts he has alleged, that Mr. Ericson or Ms. Blank-Godlove's decision and actions were in contravention of clearly established law prohibiting gender discrimination. In sum, both Ms. Blank-Godlove and Mr. Ericson are entitled to qualified immunity.

### CONCLUSION

For the reasons contained herein, the Defendants, The Rector and Visitors of George Mason University, Angel Cabrera, Juliet Blank-Godlove and Brent Ericson, respectfully request this Court to dismiss Plaintiff John Doe's Second Amended Complaint with prejudice. Respectfully submitted,

_____/s/_____
David Drummey, Asst. Atty. Gen.
Virginia Bar Number 44838
Attorney for Defendants, The Rector and Visitors of
George Mason University, Angel Cabrera, Juliet
Blank-Godlove and Brent Ericson
George Mason University
4400 University Drive, MS 2A3
Fairfax, VA 22030
Phone: (703) 993-2619
Fax: (703) 993-2340
ddrummey@gmu.edu


**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of May, 2015, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Matthew G. Kiser
Justin Dillon
Kaiser, LeGrand & Dillon, PLLC
1400 Eye Street, NW, Suite 225
Washington, DC 20005


____/s/_____
David Drummey
Virginia Bar Number 44838
Attorney for the Defendants The Rector and Visitors of George
Mason University, Angel Cabrera, Juliet Blank-Godlove and Brent
Ericson
George Mason University
4400 University Drive, MS 2A3
Fairfax, VA 22030
Phone: (703) 993-2619
Fax: (703)993-2340
ddrummey@gmu.edu