**VIRGINIA:**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| John Doe, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.:1:15-cv-00209-TSE/MSN |
| | ) | |
| The Rector and Visitors of George | ) | |
| Mason University, Angel Cabrera, | ) | |
| Brent Ericson, and Juliet Blank-Godlove | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants, The Rector and Visitors of George Mason University, Angel Cabrera, Brent Ericson and Juliet Blank-Godlove submit this reply brief in support of their Rule 12(b) motion to dismiss and in response to Plaintiff John Doe's Brief in Response to Defendants' Motion to Dismiss. Defendants respectfully request this Court to dismiss Plaintiff John Doe's Second Amended Complaint with prejudice for the reasons contained herein, in its previously filed motion to dismiss and supporting memorandum and at oral argument.

*I.    The Due Process Claims*

In his response brief, Mr. Doe misstates the Defendants' arguments with respect to the alleged property and liberty interests. The Defendants' argument is simple and clear: Mr. Doe has failed to sufficiently plead a cognizable liberty or property interest in his Second Amended Complaint. The Defendants have not presupposed there can *never* be a constitutionally protected interest with respect to Virginia public higher education as Mr. Doe alludes to throughout his brief. In addition, to be clear, the Defendants have not argued that there can never be a constitutionally protected interest with respect to matriculating students enrolled at the University. However, with

1

respect to Mr. Doe's Second Amended Complaint and his due process claims, Mr. Doe simply has failed to state any nonconclusory facts that, if taken as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  Mr. Doe's bare conclusory allegations regarding his protected interests fail on their face; there simply is no specific facts identifying the nature or the source of these alleged protected interests.

      A.  Property Interest

Although Mr. Doe generally submits that he has sufficiently plead a property interest, he still has not cited any state law as a source of his alleged property interest in "continued enrollment" at the University.  Instead, Mr. Doe relies solely on his allegations in his complaint that he was found responsible for violating the student code of conduct and expelled.  Plaintiff John Doe's Brief in Response to Defendants' Motion to Dismiss ("Response Brief"), page 6. These allegations simply do not qualify as an entitlement derived from independent source other than the U.S. Constitution, such as state law. *Board of Regents v. Roth*, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972);  *Bannum, Inc. v. Ashland*, 922 F.2d 197, 200 (4th Cir. Va. 1990); *Siu v. Johnson*, 748 F.2d 238, 244 (4th Cir. Va. 1984).  Mr. Doe still presses the existence of property interest yet makes no attempt to point to the source of law from where he derives a property interest in continued enrollment.[1]

      B.  Liberty Interest

A liberty interest may arise from the Constitution itself, or it may arise from an expectation or interest created by state laws. *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L.

---

[1] Mr. Doe misconstrues the Defendants position with respect to "continued enrollment." The bare conclusory allegation that a student has a property interest in continued enrollment at a university by itself has been fully vetted and denied more than once by this District. However, there is nothing preventing a future litigant or even the current one to find another state law source to support his claim of a property interest in continued enrollment. This district has decided it will not create one by case law.  There is also nothing preventing the court in creating an entitlement through state case law.

2

Ed. 2d 174 (2005). The Bill of Rights would be an example of a source of a liberty interest and any of the entitlements guaranteed in such could qualify as a liberty interest. Mr. Doe's alleged liberty interests do not fall within any of those textual entitlements. Another potential source would be the non-textual Constitutional rights described sometimes as "fundamental rights." The Supreme Court created liberty interests in the right to marry, *Loving v. Virginia*, 388 U.S. 1 (1967); to have children, *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535 (1942); to direct the education and upbringing of one's children, *Meyer v. Nebraska*, 262 U.S. 390 (1923); *Pierce v. Society of Sisters*, 268 U.S. 510 (1925); to marital privacy, *Griswold v. Connecticut*, 381 U.S. 479 (1965); to use contraception, *Eisenstadt v. Baird*, 405 U.S. 438 (1972); to bodily integrity, *Rochin v. California*, 342 U.S. 165 (1952), and to abortion, *Planned Parenthood v. Casey*, 505 U.S. 833 (U.S. 1992). Mr. Doe does not allege his purported liberty interests were created by any of these cases or other Supreme Court cases.

With respect to liberty interests created by state law, an individual claiming a liberty interest protected by the Fourteenth Amendment must have a legitimate claim of entitlement to it. *Henderson v. Simms*, 223 F.3d 267, 274 (4th Cir. Md. 2000); see also, *Mallette v. Arlington County Employees' Supplemental Ret. Sys. II*, 91 F.3d 630, 635 (4th Cir.1996)(Mere expectation of a benefit - even if that expectation is supported by consistent government practice – by itself is not sufficient to create an interest protected by procedural due process.) There may very well be statute or regulation that creates an entitlement, however, Mr. Doe has not pointed to any such state law source.

Mr. Doe cites *Goss v. Lopez*, 419 U.S. 565 (1975) for the proposition that it "established that a public educational institution may not expel a student for misconduct without adherence to the minimum procedures required by [the Due Process] Clause." Response Brief, page 6. There

is nothing in the text of the *Goss* opinion to suggest that the Supreme Court's ruling would extend beyond the borders of Ohio or the campuses of public high schools all the way to a Virginia public university. To the contrary, the state specific analysis employed by the Supreme Court in the *Goss* opinion mandates a much narrower holding. The critical difference between the *Goss* case and the one Mr. Doe has plead in complaint is the *Goss* Court cited and relied upon a Ohio state law as the source of the protected interest, whereas here, Mr. Doe makes no such reference. Specifically, in the Goss case, a Ohio state statute guaranteed enrollment in free public education to all residents between the ages of five and 21. *Goss*, at 573. Based on such a statute, the *Goss* Court found the state statute created an entitlement for the students of which requires due process before any deprivation of such interest.[2] *Id*. In this case, Mr. Doe has not cited any similar statute guaranteeing him enrollment (or continued enrollment) at the University or any Virginia public university or college.

Mr. Doe also relies on *Dixon v. Alabama State Board of Education*, 294 F.2d 150 (1961) in support of his argument that he has sufficiently plead facts regarding his purported property or liberty interest. In order to prevail under a procedural due process claim, plaintiff must show (1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." *Kendall v.*

---

[2] The *Goss* opinion illustrates the importance defining the nature and source of the constitutionally protected interest. In *Goss*, the entitlement was only given to residents aged five to 21. Suppose the students in *Goss* were precocious four year olds, or repetitive failing 24 year olds. In order to prevail under a procedural due process claim, plaintiff must show (1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." *Kendall v. Balcerzak*, 650 F.3d 515, 528 (4th Cir. 2011). By defining the nature and the source of the entitlement, the school administrators could dismiss the claim if the students were not in the age range of the statute. Take the same facts in *Goss* again but this time presuppose the students were expelled from one public high school but allowed to go to a neighboring public high school. Again, the school administrators could raise an argument under the second element, that the high school students were not deprived on the entitlement, they still were given free access and enrollment into another public high school. The relevant point of this exercise is that forcing the plaintiff to define his or her constitutionally protected interest may raise relevant and dispositive defenses. The "assume without deciding" analysis gives a speculative claim the "keys" to the door of discovery which runs counter to pleading standards set in *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

*Balcerzak*, 650 F.3d 515, 528 (4th Cir. 2011) The *Dixon* Court fails to identify any property or liberty interest in its analysis. In addition, *Dixon* was decided after *Board of Curators, Univ. of Missouri v. Horowitz*, 435 U.S. 78 (1978) in which, the Supreme Court *expressly* limited its holding chose *not* to decide the issue of whether or not a constitutionally protected interest exists with respect to public higher education. If *Dixon* created state law or even federal common law for the entire Second Circuit, it fails to any relevance for Virginia case law. In short, *Dixon* does not provide any useful guidance for this Court's analysis.[3]

Mr. Doe misconstrues the relevance of the distinction of an academic versus disciplinary decision and thus this Court's application of *Davis v. George Mason University*, 395 F. Supp. 2d 331 (E.D. Va. 2005). In particular, Mr. Doe suggests because *Davis* involved an academic decision, its precedent is inapplicable as the current case is a disciplinary decision. From the outset, how a benefit is deprived of has no relevance on whether or not the benefit is a constitutionally protected property interest. Simply put, the benefit either is, or it isn't a constitutionally protected interest, the reasons why or how a state actor may have deprived someone of such benefit are irrelevant for the first part of the test (the existence of a protected interest). It matters not if Mr. Doe's ability to "continue his enrollment at the University" was cut short by an academic decision or for disciplinary reasons.

---

[3] Mr. Doe also cites *Tigrett v. Rector & Visitors of the Univ. of Va.*, 137 F. Supp. 2d 670 (W.D. Va. 2001) for the proposition that once a public university expels a student for disciplinary there is no question due process is required. The dicta in the Western District opinion that states "it is no longer open to question that any expulsion from a state university or college must comport with the Due Process Clause" is unpersuasive. First, the *Tigrett* court cites *Goss* in support of the broad statement. *Id.* at 675. In *Goss*, the Supreme Court first identified an entitlement of the high school student by virtue of a Ohio state statute. To draw such a broad statement from *Goss* is simply incorrect. In addition, the *Tigrett* court contradicts itself by recognizing that the court must first ask whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of life, liberty or property. *Id.* It also contradicts its broad sweeping statement by *assuming* a property and liberty interest. Clearly, if there was no question still left open that public university needs to comply with due process in expulsion cases, why is it necessary for the court to ask if an interest existed or even *assume* a property or liberty interest in the case at hand?

By arguing *Davis* isn't applicable to this case because it was an academic decision, Mr. Doe suggests an illogical result: "continued enrollment at the University" is a property interest when a University is making a disciplinary decision, but isn't a property interest when a University is making an academic decision. Under Mr. Doe's theory, property and liberty interests are now not only derived from the Constitution and state law, but also from a state's procedures or a state actor's motivations. Mr. Doe's argument is unsupported and would result in conflicting constitutionally protected interests. It is also doubtful the distinction is relevant, given the disciplinary process is considered a teaching moment and thus also, an academic decision.

While much discussion has been generated about the distinction between an academic decision and disciplinary decision, if there is any relevance it is related only to the third part of a due process test, that is, was the plaintiff afforded required due process. Courts that have considered the distinction recognize that a higher level of scrutiny is required to meet the due process standards when reviewing disciplinary decisions. *Monroe v. Ark. State Univ.*, 495 F.3d 591, 595 (8th Cir. Ark. 2007); *Ku v. Tennessee*, 322 F.3d 431, 436 (6th Cir. Tenn. 2003) *Brown v. Li*, 308 F.3d 939, 954 (9th Cir. Cal. 2002) *Hennessy v. City of Melrose*, 194 F.3d 237, 252 (1st Cir. Mass. 1999)(academic decisions do not require a formal hearing) *Wheeler v. Miller*, 168 F.3d 241, 250 (5th Cir. Tex. 1999) (the requirements of due process may vary with respect to academic and disciplinary decisions).

    C. <u>Substantive Due Process</u>

In his complaint, citing *Lawrence v. Texas*, 539 U.S. 558 (2003), Mr. Doe states that the liberty component of the Due Process Clause includes protection to adult persons in deciding how to conduct their private lives in matters of sex, and further the right to define the meaning of and to set boundaries in such relationships. Second Amended Complaint, ¶ 116. Mr. Doe alleges such

a right is deeply rooted in this Nation's history and tradition, citing *Moore v. City of East Cleveland*, 431 U.S. 494 (1977). *Id.*, ¶ 117. Next, Mr. Doe alleges that Ms. Roe and himself had such a right, specifically to define the meaning of their sexual relationship and to set its boundaries. *Id.*, ¶ 118. Mr. Doe next alleges that Defendant Ericson failed to consider the terms of Ms. Roe and Mr. Doe's sexual relationship, disregarded such relationship as being one deserved of respect, favored other sexual relationships, and arbitrarily punished Mr. Doe by deciding Mr. Doe's sexual relationship was per se sexual misconduct. *Id.*, ¶¶ 119-122. Based on the preceding, in reality it is Mr. Doe's entire substantive due process claim that is truly "absurd."

Since factual allegations must temporarily be taken as true for purposes of a motion to dismiss, the Defendants must argue the facts presented, however bizarre. Although conclusory in nature, the Defendants have taken Mr. Doe's supposition that he had a constitutional right protected by substantive due process to define the meaning of and set boundaries to his BDSM sexual relationship with Ms. Roe as true, and argued if that right was voluntarily relinquished by Mr. Doe, as he plead in his complaint (¶ 41), he cannot demonstrate under any set of facts that the Defendants' *deprived* him of that right. *Woodend v. Lenape Reg'l High Sch. Dist.*, 535 Fed. Appx. 164, 167 (3d Cir. N.J. 2013) (plaintiff's due process claim in employment failed because plaintiff voluntarily resigned) *Spangler v. Lucas County*, 477 Fed. Appx. 301, 304 (6th Cir. Ohio 2012)(county employee who voluntarily resigns cannot thereafter sue the county and allege due process violations, as employee herself, not county, deprived her of the property interest); *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 827 (4th Cir. 1995)( plaintiff must demonstrate (1) that he had a constitutionally protected interest at stake; (2) that the defendants deprived him of this interest; and (3) that the defendants' actions falls so far beyond the outer limits of legitimate

governmental action that no process could cure the deficiency.) The "absurdity" Mr. Doe notes is wholly born from his own ridiculous allegations.[4]

Mr. Doe's potential future BDSM relationships are irrelevant as he didn't claim a constitutionally protected right in such relationships, ***he claimed the right was vested in the one he and Ms. Roe formerly shared***, which was voluntarily terminated prior to Ms. Roe filing sexual misconduct charges with the University.[5] Even if the Court could somehow completely suspend disbelief and accept the notion the original drafters of the Constitution contemplated protecting potential future BDSM relationships as one's inalienable right, the speculative nature alone of such relationships hardly can be said to give Mr. Doe any standing to claim a real injury or harm that can be redressed by the Court.

## II. *The Free Speech Retaliation Claim*

If Mr. Doe's speech was not alarming to such a degree as qualifying as a "true threat", then it was at most, "trivial" as Mr. Doe alleges in his complaint. If "trivial" in nature, the speech is no different than simple self-expression, without expressing any idea or opinion contributing to the intellectual marketplace. Second Amended Complaint, ¶ 134, *Corlett v. Oakland Univ. Bd. of Trs*., 958 F. Supp. 2d 795, 809 ( E.D. Mich. 2013)( "Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values.")

It appears Mr. Doe wants to have his cake and it eat it too. On the hand, he wants his communication to be thought of as "trivial," not serious, a tongue in cheek comment, if the court

---

[4] This baseless claim illustrates one of the many problems of allowing parties to remain anonymous. Under the cloak of anonymity, litigants can raise even the most ridiculous arguments such as this one without any accountability or ownership.

[5] Mr. Doe's shifting positions with respect to his substantive due process claims demonstrates the necessity of requiring plaintiffs to plead cognizable property or liberty interests.

8

is determining whether or not the speech is a "true threat" to others in close proximity of him. Yet, on the other hand, Mr. Doe suggests his speech isn't so "trivial" that it loses any First Amendment protection. It's either expressive in the sense that it was meant to convey a particularized message or it wasn't, it can't be both at the same time. Since the Court must accept the facts alleged as true, Mr. Doe's admission that his speech lacked any substantive message should eviscerate his First Amendment retaliation claim.

Oddly, Mr. Doe argues speech doesn't retroactively lose its protection because the speaker and recipient choose not to speak anymore. Assuming the speech is protected, Mr. Doe's proposition is probably correct, yet entirely irrelevant as this wasn't argued by the Defendants. The Defendants argued that a two year protective order prohibiting all contact was awarded to Ms. Roe against Mr. Doe. Second Amended Complaint, ¶ 48. Mr. Doe's speech with Ms. Roe whether it be false suicide threats or his thoughts on the next presidential election, were effectively frozen by court order. This order was obtained *prior* to the University taking "any official action" against Mr. Doe, and by its terms still remains in effect today. Second Amended Complaint, ¶ 48. Accordingly, Mr. Doe, under any set of facts, would not be able to demonstrate chilling effect caused by the University.

Further, whether someone is chilled in their speech or not, is guided by a reasonable person standard, not a person's idiosyncratic subjective temperament. Even if you assume Mr. Doe was chilled in making any further "trivial" speech, finding that the University's decision and sanction was the proximate cause of chilling rather than the court's order would be baseless under even the most flexible reasonable person standard. The test is not whether plaintiff's First Amendment rights were chilled, but whether a person of reasonable firmness in Appellants' situation would

have been chilled. *Ruttenberg v. Jones*, 283 Fed. Appx. 121, 130 (4th Cir. Va. 2008). A person of reasonable firmness wouldn't just be chilled in response to the court's order, he would be frozen.

### III. The Negligence Claims

The Commonwealth of Virginia, its agencies and employees enjoy sovereign immunity from claims except in cases where the Commonwealth explicitly waived the immunity by statute or through self-executing constitutional provisions. *DiGiacinto v. Rector & Visitors of George Mason Univ.*, 281 Va. 127, 137, 704 S.E.2d 365, 370-71 (2011). Although the General Assembly has waived sovereign immunity for lawsuits against itself for tort claims under the Virginia Tort Claims Act, it has not done so for its agencies or its employees. Va. Code § 8.01-195.3. The University is an agency of the Commonwealth, and the individual defendants are all employees of that agency. *Rector & Visitors of the Univ. of Va. v. Carter*, 267 Va. 242, 245 (Va. 2004) Accordingly, the negligence claims, Counts V, VI and VII should be dismissed.

### IV. The Gender Discrimination Claims

Guidance from the case Mr. Doe cites *Yusuf v. Vassar College*, 35 F. 3d 709 (2d Cir. 1994) is misplaced as it predates *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) which sets forth the current plausibility pleading standard for complaints. Rather than highlight nonconlusory facts in his own complaint that could demonstrate a plausible claim for relief under a gender discrimination claim, he highlights the pleading similarities of a dated Second Circuit case decided prior to the current pleading standard. Further, all of the nonconclusory facts Mr. Doe does highlight suggest no bias or favoritism against or towards one gender or the other. Quite simply, Mr. Doe proffers only the self-serving conclusion that the wrong decision was reached as the evidence of discriminatory animus. Mr. Doe attempts to merge his alleged facts of procedural defects in his due process claims as facts supporting his

claims of gender discrimination. Again, none of those alleged facts raise any inference of discriminatory intent. Under Mr. Doe's pleading theory, every due process claim and every incorrect decision together or separately would be a candidate for gender discrimination claim.

## CONCLUSION

For the reasons contained herein, the Defendants, The Rector and Visitors of George Mason University, Angel Cabrera, Juliet Blank-Godlove and Brent Ericson, respectfully request this Court to dismiss Plaintiff John Doe's Second Amended Complaint with prejudice. This is the Plaintiff's third iteration of his Complaint. Accordingly, he has had plenty of chances to sharpen his claims, yet he has still failed state a claim upon which relief could be granted. Any further chances to amend would be futile.

Respectfully submitted,

\_\_\_\_\_/s/_____
David Drummey, Asst. Atty. Gen.
Virginia Bar Number 4483
Attorney for Defendants, The Rector and Visitors of George Mason University, Angel Cabrera, Juliet Blank-Godlove and Brent Ericson
George Mason University
4400 University Drive, MS 2A3
Fairfax, VA 22030
Phone: (703) 993-2619
Fax: (703) 993-2340
ddrummey@gmu.edu

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 21th day of May, 2015, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>Matthew G. Kiser
>Justin Dillon
>Kaiser, LeGrand & Dillon, PLLC
>1400 Eye Street, NW, Suite 225
>Washington, DC 20005

>____/s/_____
>David Drummey
>Virginia Bar Number 44838
>Attorney for the Defendants The Rector and Visitors of George Mason University, Angel Cabrera, Juliet Blank-Godlove and Brent Ericson
>George Mason University
>4400 University Drive, MS 2A3
>Fairfax, VA 22030
>Phone: (703) 993-2619
>Fax: (703)993-2340
>ddrummey@gmu.edu