**V I R G I N I A :**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| John Doe, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.:1:15-cv-00209-TSE/MSN |
| | ) | |
| The Rector and Visitors of George | ) | |
| Mason University, Angel Cabrera, | ) | |
| Brent Ericson, and Juliet Blank-Godlove | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER AND AFFIRMATIVE DEFENSES

The Defendants, The Rector and Visitors of George Mason University, Angel Cabrera,

Brent Ericson, and Juliet Blank-Godlove, submit this answer and affirmative defenses to Plaintiff

John Doe's Second Amended Complaint.

1. Admitted that Mr. Doe is a resident of the Commonwealth of Virginia.  It is admitted

   Plaintiff John Doe was a matriculating undergraduate student at the University from the

   Fall semester of 2012 until the end of the Fall semester of 2014.  Admitted that University

   initiated student disciplinary proceedings against Mr. Doe for violating University's policy,

   however, it is denied that such proceedings were initiated because Mr. Doe engaged in sex

   with Ms. Roe or because Ms. Roe and Mr. Doe practiced bondage and discipline,

   dominance and submission, sadism and masochism ("BDSM") sex.  It is admitted Mr. Doe

   was initially found "not responsible" on September 12, 2014, by a hearing panel comprised

   of three faculty members.  It is also admitted Ms. Roe appealed the hearing panel's

   decision.  It is also admitted that the Defendant, Brent Ericson, found Mr. Doe responsible

   for violating University policy after he listened to and reviewed the entire digital audio

recording of hearing and met individually with Ms. Roe and Mr. Doe (twice). It is further admitted that as a result of Mr. Ericson's finding, Mr. Doe was expelled from the University.  It is denied Mr. Doe was "sentenced", the University's student disciplinary process is not a criminal proceeding, Mr. Doe was not arrested or incarcerated in any way as a result of the University's finding and expulsion.  With respect to the allegation that Mr. Doe's future education or employment will be "substantially limited," the Defendants are without sufficient knowledge to admit or deny such allegation. To the extent the Defendants are required to admit or deny, the Defendants deny such an allegation at this stage of litigation.

2. Admitted.

3. It is denied Defendant Angel Cabrera is tasked with establishing, implementing or carrying out the University's Code of Student Conduct and its procedures, however, the remainder of the allegations in the paragraph is admitted.

4. Admitted.

5. Admitted.

6. Without waiving such defenses, assuming Mr. Doe's claims are ripe, an actual case or controversy and justiciable, it is admitted this Court has original jurisdiction under 28 USC § 1331. Since the state law claims have been dismissed, the allegation regarding supplemental jurisdiction is moot. To the extent an admission or denial is required, the Defendants deny the allegation.

7. It is denied Ms. Blank-Godlove and Mr. Ericson are officers of the University, however the remaining allegations in the paragraph are admitted.

8.  It is admitted the University initiated student disciplinary proceedings against Mr. Doe for violating the University's Code of Student Conduct. It is also admitted Mr. Doe was initially found not responsible by a hearing panel after a hearing. It is also admitted Ms. Roe appealed the hearing panel's decision.  It is denied Mr. Doe was expelled based on an erroneous finding that he violated the University's Code of Student Conduct. It is admitted Mr. Doe appealed Mr. Ericson's decision finding Mr. Doe responsible for violating the Code, and such appeal was denied by Ms. Blank-Godlove. The remainder of the allegations call for legal conclusions. To the extent a response is required, the allegations are denied.

9.  Admitted.

10. Admitted.

11. To the extent the allegations in this paragraph suggest a contractual relationship between the University and students the allegations are denied.

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. Admitted.

18. Admitted.

19. Admitted.

20. Admitted.

21. Admitted.

22. The Defendants are without sufficient information to deny or admit the allegations. To the extent a response is required, the allegations are denied.

23. The Defendants are without sufficient information to deny or admit the allegations. To the extent a response is required, the allegations are denied.

24. The Defendants are without sufficient information to deny or admit the allegations. To the extent a response is required, the allegations are denied.

25. The Defendants are without sufficient information to deny or admit the allegations. To the extent a response is required, the allegations are denied.

26. It is admitted that Ms. Roe and Mr. Doe engaged in BDSM sexual activity.  It is also admitted that Ms. Roe and Mr. Doe agreed to BDSM safe word "red", in which if used, Mr. Doe agreed to cease the BDSM sexual activity.  The Defendants are without sufficient information to deny or admit the allegation that Ms. Roe informed Mr. Doe to continue the BDSM sexual activity even if she said "stop." To the extent a response is required, the allegation is denied.

27. The Defendants are without sufficient information to deny or admit the allegations. To the extent a response is required, the allegations are denied.

28. The Defendants are without sufficient information to deny or admit the allegations. To the extent a response is required, the allegations are denied.

29. The Defendants are without sufficient information to deny or admit the allegations. To the extent a response is required, the allegations are denied.

30. The Defendants are without sufficient information to deny or admit the allegations. To the extent a response is required, the allegations are denied.

31. The Defendants are without sufficient information to deny or admit the allegations. To the extent a response is required, the allegations are denied.

32. Upon information and belief, Ms. Roe received a disturbing text message from Mr. Doe which put Ms. Roe in fear for her personal safety. Upon information and belief, Ms. Roe's fear for her own personal safety prompted her to file complaints with her school's campus police, University's campus police, the Fairfax General District Court seeking a protective order and the University's Office of Student Conduct. It is denied Ms. Roe's complaints against Mr. Doe were limited to the events that took place on October 27, 2013.

33. It is admitted Ms. Roe and Mr. Doe met with one another during the month of October, 2013, however, as to the remainder of the allegations the Defendants are without sufficient information to deny or admit. To the extent a response is required, the remainder of the allegations are denied.

34. It is admitted Ms. Roe and Mr. Doe met at Mr. Doe's dormitory room, however, as to the remainder of the allegations the Defendants are without sufficient information to deny or admit. To the extent a response is required, the remainder of the allegations are denied.

35. The Defendants are without sufficient information to deny or admit the allegations. To the extent a response is required, the allegations are denied.

36. The Defendants deny Mr. Doe engaged in consensual sex with Ms. Roe. The remainder of the allegation is admitted.

37. Admitted.

38. The Defendants are without sufficient information to deny or admit that Ms. Roe had an orgasm or that they cuddled in Mr. Doe's bed. To the extent a response is required, such allegations are denied. Further, it is denied Mr. Doe continued the sexual act because Ms.

Roe didn't use the safe word.  By way of further explanation, in a recorded telephone conversation between Ms. Roe and Mr. Doe, Ms. Roe asked Mr. Doe why he never stopped when she used the safe word, Mr. Doe said he "felt like [Ms. Roe] could handle it."  The tape recorded telephone conversation was submitted to and reviewed by the hearing panel. During the September 5, 2014, sexual misconduct hearing, when Mr. Doe was asked by a hearing panel member if there were instances outside of October 27, in which Ms. Roe used the safe word and Mr. Doe did not stop, Mr. Doe admitted "They were very rare." Mr. Doe went on to explain "it was normally late in the relationship, very late in the relationship where I didn't stop." Whether Ms. Roe used physical cues, the safe word or if she explicitly told Mr. Doe to stop, Mr. Doe disregarded Ms. Roe's attempt to express her lack of consent.

39. The Defendants are without sufficient information to deny or admit that Mr. Doe's roommate returned to the room, that Ms. Roe had another orgasm or Ms. Roe fell asleep in Mr. Doe's arms. To the extent a response is required, such allegations are denied. Further, it is denied Mr. Doe continued the sexual act because Ms. Roe didn't use the safe word. By way of further explanation, in a recorded telephone conversation between Ms. Roe and Mr. Doe, Ms. Roe asked Mr. Doe why he never stopped when she used the safe word, Mr. Doe said he "felt like [Ms. Roe] could handle it."  The tape recorded telephone conversation was submitted to and reviewed by the hearing panel.  During the September 5, 2014, sexual misconduct hearing, when Mr. Doe was asked by a hearing panel member if there were instances outside of October 27, in which Ms. Roe used the safe word and Mr. Doe did not stop, Mr. Doe admitted "They were very rare." Mr. Doe went on to explain "it was normally late in the relationship, very late in the relationship where I didn't stop." Whether Ms. Roe

used physical cues, the safe word or if she explicitly told Mr. Doe to stop, Mr. Doe disregarded Ms. Roe's attempt to express her lack of consent.

40. The Defendants are without sufficient information to deny or admit that the encounter was typical for Ms. Roe and Mr. Doe or it was not unusual for Ms. Roe to use the safe word. To the extent a response is required, such allegations are denied. Further, it is denied Ms. Roe never indicated to Mr. Doe that he crossed the boundaries or had not respected her wishes.

41. The Defendants are without sufficient information to deny or admit that Ms. Roe and Mr. Doe continued to engage in a dominant-submissive sexual relationship. To the extent a response is required, such allegation is denied. In addition, Ms. Roe's judgement, or lack thereof, in continuing to date Mr. Doe after he ignored Ms. Roe's use of the safe word, said "stop" or gave any other physical cues in which she expressed her lack of consent is irrelevant.

42. Denied. Ms. Roe was harassed by Mr. Doe and felt threatened by his attempts to communicate with her. It was only after a culmination of unwanted contact by Mr. Doe with the text message being the tipping point in which Ms. Roe felt it necessary to obtain a protective order against Mr. Doe from the Fairfax County General District Court pursuant to Virginia Code § 19.2-152.9(D). The Fairfax County General District Court awarded Ms. Roe a protective order on July 24, 2014. Mr. Doe appealed the July 24, 2014, protective order to Fairfax County Circuit Court, which after a new hearing, entered a protective order on November 5, 2014. At least two state court judges found that Ms. Roe proved by a preponderance of the evidence that Mr. Doe subjected Ms. Roe to "an act of violence, force, or threat."

43. The Defendants are without sufficient information to deny or admit the allegations. To the extent a response is required, the allegations are denied.

44. The Defendants deny Ms. Roe reported Mr. Doe to her campus police simply because he asked her to play video games.  Further, Defendants deny that Ms. Roe's school chose not to pursue any action against Mr. Doe.  The text message Ms. Roe complained about was the text message in which Mr. Doe stated he would obtain a gun and shoot himself in the chest.  Ms. Roe felt it necessary to obtain a protective order against Mr. Doe from the Fairfax County General District Court pursuant to Virginia Code § 19.2-152.9(D).  The Fairfax County General District Court awarded Ms. Roe a protective order on July 24, 2014.   Mr. Doe appealed the July 24, 2014, protective order to Fairfax County Circuit Court, which after a new hearing, entered a protective order on November 5, 2014.  At least two state court judges found that Ms. Roe proved by a preponderance of the evidence that Mr. Doe subjected Ms. Roe to "an act of violence, force, or threat."

45. It is admitted that Ms. Roe reported that she was being harassed by Mr. Doe, and was in fear for her safety given Mr. Doe's past conduct towards her and the text message she received from Mr. Doe referencing a firearm.

46. Admitted.

47. The allegations refers to a document which speaks for itself.  To the extent a response is required, the allegations are denied.

48. Admitted that prior to any student disciplinary process was initiated against Mr. Doe, Ms. Roe filed for a protective order against Mr. Doe in Fairfax County General District Court which was awarded on July 24, 2014.  The testimony given at the protective order has been

transcribed by a court reporter.   To the extent the allegations in this paragraph are misquoted or mischaracterized, the allegations are denied.

49. The allegations refer to a document that speaks for itself, to the extent a response is required the Defendants deny the allegations. Defendants also deny the allegation that Mr. Ericson did not provide an explanation to Mr. Doe regarding his decision.

50. Admitted.

51. Admitted.

52. It is admitted Mr. Doe was given an opportunity to submit a written response to Ms. Roe's written complaint against Mr. Doe which was submitted on or about August 28, 2014.   It is admitted the hearing commenced at or around 10:15 a.m., on September 5, 2014.   It is also admitted the hearing, including breaks, lasted over ten hours.   It is denied multiple breaks were taken at the request of Ms. Roe in order for her to speak with her advisor. Breaks were taken for lunch, deliberation, and at the request of both Mr. Doe and Ms. Roe.

53. Admitted.

54. Admitted, however, Ms. Roe also stated that she used the safe word in the past and in response to her use of the safe word Mr. Doe became more violent.   In addition, Mr. Doe admittedly ignored her use of the safe word.   Whether Ms. Roe used physical resistance or verbal resistance (safe word or otherwise), Mr. Doe did not respect Ms. Roe's wishes to stop the sex act.

55. Admitted that in the course of investigating potential criminal charges against Mr. Doe, the University police suggested Ms. Roe call Mr. Doe and ask him about any nonconsensual touching while recording the phone conversation.   It is admitted that during the recorded conversation, Mr. Doe apologized for not stopping when she asked him to stop.   During

the conversation, Mr. Doe  admitted he heard Ms. Roe use safe word, however, he continued to engage in the sex act because he "felt she could hand it."  It is denied Ms. Roe called a University police officer as a witness during the University's September 5, 2014, hearing.

56. Admitted Mr. Doe presented himself and two other students as witnesses during the September 5, 2014, hearing, however, it is denied Mr. Doe and Ms. Doe's descriptions of the facts by Ms. Roe and Mr. Doe were identical.

57. Denied with respect to Mr. Doe stating to the hearing panel he believed Ms. Roe filed these allegations against him because he revealed several past infidelities to Ms. Roe.  The remainder of the allegations are admitted.

58. Admitted, however, specifically Mr. Doe stated Ms. Roe and Mr. Doe broke up early February, 2014.

59. To the extent the August 17, 2013, messages, demonstrate Ms. Roe gave consent to all future sex acts, the allegations are denied.

60. Denied.

61. Denied with respect to the hearing panel's reasoning for allowing information regarding the past sexual behavior of Ms. Roe and Mr. Doe.  Moreover, to the extent the student sexual misconduct charges were limited to the October 27, 2013, date, the allegations are denied.  The charges and Ms. Roe's complaint narrative which was shared with Mr. Doe prior to the sexual misconduct hearing, clearly implicate nonconsensual sexual touching on more than one occasion beyond the October 27, 2013 date.

62. Denied with respect to allegation that the hearing panel "chose to believe" Mr. Doe over Ms. Roe. Denied with respect to the conclusion that the "use of the safe word impacted

what constituted consent for the parties."  Denied with respect to the sexual misconduct charges against Mr. Doe being limited to October 27, 2013.

63. Admitted.

64. Admitted.

65. Admitted.

66. The allegation refers to a document which speaks for itself.  To the extent a response is required, the allegations are denied.

67. The allegation refers to a document which speaks for itself.  To the extent a response is required, the allegations are denied.

68. Denied.

69. Denied.

70. Denied.

71. Denied.

72. Denied.

73. The allegation refers to a document which speaks for itself.  To the extent a response is required, the allegations are denied.

74. Denied.

75. Denied.

76. Admitted that Mr. Ericson met with Mr. Doe to discuss the appeal however it is denied Mr. Doe was not allowed to file anything opposing the appeal.

77. Denied.

78. Admitted.

79. Denied.

80. Denied.

81. It is admitted that Mr. Doe argued, among other things, that Ms. Roe's appeal did not meet any of the requirements for an appeal to be considered.

82. It is admitted that Mr. Doe argued Ms. Roe's appeal did not cite any procedural irregularity and was only a disagreement with the hearing panel's decision.

83. It is admitted Ms. Roe's appeal was based on procedural irregularity.

84. It is admitted Mr. Doe argued that finding his side of the story more credible is not a procedural irregularity as meant by the Code of Conduct.  The remainder of the allegation is denied.

85. Admitted that Mr. Doe argued that the modification of the hearing panel's decision was "improper and violates the University's guidelines for an appeal process."

86. It is admitted that on December 5, 2014, Ms. Blank-Godlove affirmed Mr. Ericson's decision and upheld his recommended expulsion.  It is admitted Ms. Blank-Godlove stated she could not find a valid reason for modification or revision of the original decision. The remainder of the allegation is denied.

87. Defendants incorporate by reference all of the responses above in the preceding paragraphs which correspond to the Second Amended Complaint's numbered paragraphs.

88. Admitted.

89. The allegation calls for a legal conclusion to which the Defendants are not required to admit or deny.   To the extent a response is required, the allegation is denied.

90. The allegation calls for a legal conclusion to which the Defendants are not required to admit or deny.   To the extent a response is required, the allegation is denied.

91. The allegation calls for a legal conclusion to which the Defendants are not required to admit or deny.   To the extent a response is required, the allegation is denied.

92. The allegation calls for a legal conclusion to which the Defendants are not required to admit or deny.   To the extent a response is required, the allegation is denied.

93. The allegation calls for a legal conclusion to which the Defendants are not required to admit or deny.   To the extent a response is required, the allegation is denied.

94. The allegation calls for a legal conclusion to which the Defendants are not required to admit or deny.   To the extent a response is required, the allegation is denied.

95. The allegation calls for a legal conclusion to which the Defendants are not required to admit or deny.   To the extent a response is required, the allegation is denied.

96. The allegation calls for a legal conclusion to which the Defendants are not required to admit or deny.   To the extent a response is required, the allegation is denied.

97. The allegation calls for a legal conclusion to which the Defendants are not required to admit or deny.   To the extent a response is required, the allegation is denied.

98. The allegation calls for a legal conclusion to which the Defendants are not required to admit or deny.   To the extent a response is required, the allegation is denied.

99. Denied.  After Ms. Roe's appeal, Mr. Ericson met with Mr. Doe twice.  At the first meeting, Mr. Doe was given a copy of Ms. Roe's written appeal.  At the second meeting, Mr. Ericson discussed Ms. Roe's appeal in detail with Mr. Doe.  Prior to that meeting, Mr. Ericson encouraged Mr. Doe to bring his counsel to the second meeting and submit a written statement.

100.     It is admitted after Ms. Roe submitted her appeal, Mr. Ericson met with both Ms. Roe (once) and Mr. Doe (twice) individually.   It is denied Mr. Doe was deprived of Ms. Roe's claims in her appeal.

101.     Denied.  Mr. Doe had a copy of Ms. Roe's appeal and also had the benefit of the in person meeting with Mr. Ericson discussing the issues raised by Ms. Roe in her appeal, what Mr. Ericson heard in the transcript and recorded telephone conversation between Mr. Doe and Ms. Roe.

102.     Denied.

103.     Denied.

104.     Denied.

105.     Denied.

106.     Denied.

107.     To the extent the allegation characterizes the procedures as being improper or the correct final decision was not made by the University, the allegations are denied.

108.     Denied.

109.     Denied.

110.     Denied.

111.     Denied.

112.     Denied.

113.     Denied.

114.     Defendants incorporate by reference all of the responses above in the preceding paragraphs which correspond to the Second Amended Complaint's numbered paragraphs.

115.    Denied.   Both Ms. Roe and Mr. Doe stated that certain BDSM sexual activities were not consensual.

116.    The allegation calls for a legal conclusion to which the Defendants are not required to admit or deny.   To the extent a response is required, the allegation is denied.

117.    The allegation calls for a legal conclusion to which the Defendants are not required to admit or deny.   To the extent a response is required, the allegation is denied.

118.    The allegation calls for a legal conclusion to which the Defendants are not required to admit or deny.   To the extent a response is required, the allegation is denied.

119.    Denied.

120.    Denied.

121.    Denied.

122.    Denied.

123.    Denied.

124.    Denied.

125.    Defendants incorporate by reference all of the responses above in the preceding paragraphs which correspond to the Second Amended Complaint's numbered paragraphs.

126.    The allegation refers to a document which speaks for itself.  To the extent a response is required, the allegations are denied.

127.    Denied.

128.    Denied.

129.    Defendants incorporate by reference all of the responses above in the preceding paragraphs which correspond to the Second Amended Complaint's numbered paragraphs.

130.     Admitted that Mr. Doe texted Ms. Roe that he would get a gun and shoot himself if she did not contact him.  It is denied that this behavior was not reasonably viewed as threatening to Ms. Roe.

131.     Admitted.

132.     Denied.

133.     Denied. In addition, a Fairfax County General District Court Judge and Circuit Judge found otherwise when they signed the two year protective orders.

134.     Denied.

135.     The allegation calls for a legal conclusion to which the Defendants are not required to admit or deny.   To the extent a response is required, the allegation is denied.

136.     Denied.

137.     Denied.

138.     Denied.

139.     Defendants incorporate by reference all of the responses above in the preceding paragraphs which correspond to the Second Amended Complaint's numbered paragraphs.

140.     The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

141.     The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

142.     The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

143.     The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

144.    The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

145.    The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

146.    Defendants incorporate by reference all of the responses above in the preceding paragraphs which correspond to the Second Amended Complaint's numbered paragraphs.

147.    The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

148.    The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

149.    The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

150.    The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

151.    The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

152.    The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

153.    The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

154.    The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

155.      Defendants incorporate by reference all of the responses above in the preceding paragraphs which correspond to the Second Amended Complaint's numbered paragraphs.

156.      The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

157.      The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

158.      The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

159.      The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

160.      The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

161.      The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

162.      The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

163.      The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

164.      The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

165.      The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

166.      The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

167.      The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

168.      The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

169.      The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

170.      The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

171.      The paragraph allegation relates to a count that has been dismissed by the Court. To the extent a response is required, the paragraph is denied.

172.      Defendants incorporate by reference all of the responses above in the preceding paragraphs which correspond to the Second Amended Complaint's numbered paragraphs.

173.      Admitted.

174.      Admitted.

175.      Admitted that Title IX prohibits discrimination in the education setting based on a student's gender, however, without defining "archaic assumptions about gender roles and preferences" and how such assumptions relate to this case calls for speculation and a legal conclusion. To the extent a response is required, the remainder of the allegation is denied.

176.      Admitted.

177.      The paragraph calls for legal conclusion to which an admission or denial is not required. To the extent a response is required, the allegation is denied.

178.    Denied.

179.    Denied.

180.    Denied.

181.    Denied.

182.    Denied.

183.    Denied.

184.    Denied.

185.    The paragraph calls for legal conclusion to which an admission or denial is not

required.  To the extent a response is required, the allegation is denied.

186.    Denied.

187.    Denied.

188.    The Defendants are without sufficient information to admit or deny such

allegations. To the extent a response is required, the allegations are denied.

189.    The Defendants are without sufficient information to admit or deny such

allegations. To the extent a response is required, the allegations are denied.

190.    Denied.

191.    Denied.

192.    Denied.

193.    Denied.

194.    Defendants incorporate by reference all of the responses above in the preceding

paragraphs which correspond to the Second Amended Complaint's numbered paragraphs.

195.    Admitted.

196.    Denied.

197.     Denied.

198.     The paragraph calls for legal conclusion to which an admission or denial is not required.  To the extent a response is required, the allegation is denied.

199.     The paragraph calls for legal conclusion to which an admission or denial is not required.  To the extent a response is required, the allegation is denied.

200.     The paragraph calls for legal conclusion to which an admission or denial is not required.  To the extent a response is required, the allegation is denied.

201.     Denied.

202.     Denied.

203.     Defendants incorporate by reference all of the responses above in the preceding paragraphs which correspond to the Second Amended Complaint's numbered paragraphs.

204.     Admitted.

205.     Admitted.

206.     Denied.

207.     Denied.

## AFFIRMATIVE DEFENSES

1. The Second Amended Complaint fails to state a claim against the Defendants upon which relief may be granted.

2. The Court lacks subject matter jurisdiction over the Complaint and its causes of actions.

3. The claims are barred in whole or part by the doctrine of qualified immunity.

4. The claims are barred in whole or part by the doctrine of sovereign immunity.

5. Plaintiff's claims are barred, in whole or part, because Plaintiff have not suffered any damages as a result of Defendants' acts or omissions.

6.  Plaintiff's claims are barred, in whole or part, by the defense of laches.

7.  Plaintiff's claims are barred, in whole or part, by the defense of unclean hands.

8.  Plaintiff's actions did not constitute actions protected by the First Amendment.

9.  Plaintiff have suffered no adverse actions as a result of exercising their First Amendment rights.

10. There is no causal relationship between Plaintiff's alleged protected activity and the Defendants' alleged actions.

11. Plaintiff's claims are barred, in whole or part, by the defense of justiciability, redressability, or ripeness.

12. Defendants reserve the right to amend this answer to raise any and all available defenses that may arise in the course of this litigation.

    *WHEREFORE*, Defendants respectfully request this Honorable Court to dismiss the Second Amended Complaint and to award to the Defendants reasonable attorneys' fees and costs.

                                   Respectfully submitted,


                                   _____/s/_____
                                   David Drummey, Asst. Atty. Gen.
                                   Virginia Bar Number 44838
                                   The Rector and Visitors of George Mason
                                   University, Angel Cabrera, Juliet Blank-Godlove
                                   and Brent Ericson
                                   George Mason University
                                   4400 University Drive, MS 2A3
                                   Fairfax, VA 22030
                                   Phone: (703) 993-2619
                                   Fax: (703) 993-2340
                                   ddrummey@gmu.edu

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of July, 2015, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Matthew G. Kiser
Justin Dillon
Kaiser, LeGrand & Dillon, PLLC
1400 Eye Street, NW, Suite 225
Washington, DC 20005


_____/s/_____
David Drummey
Virginia Bar Number 44838
Attorney for the Defendants The Rector and Visitors of George Mason University, Angel Cabrera, Juliet Blank-Godlove and Brent Ericson
George Mason University
4400 University Drive, MS 2A3
Fairfax, VA 22030
Phone: (703) 993-2619
Fax: (703)993-2340
ddrummey@gmu.edu