**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| **JOHN DOE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 1:15-cv-00209-TSE/MSN** |
| ) | |
| **THE RECTOR AND VISITORS OF** ) | |
| **GEORGE MASON UNIVERSITY, ANGEL** ) | |
| **CABRERA**, *President of George Mason* ) | |
| *University, sued in his official capacity,* **and** ) | |
| **BRENT ERICSON and JULIET BLANK-** ) | |
| **GODLOVE,** *employees of George Mason* ) | |
| *University, sued in his or her official and* ) | |
| *individual capacity, jointly and severally*, ) | |
| ) | |
| **Defendants.** ) | |

---

**PLAINTIFF JOHN DOE'S MOTION FOR**
**ATTORNEYS' FEES AND COSTS UNDER 42 U.S.C. § 1988**

Fourteen months ago, Plaintiff John Doe filed this lawsuit, contending that Defendants had illegally expelled him from George Mason University ("GMU") on two charges of misconduct: one for sexually assaulting Jane Roe and the other for sending her a text message that might cause her distress. Mr. Doe's suit pled several claims and raised several legal theories as to why Mr. Doe's expulsion on these two charges was illegal—including procedural and substantive due process claims, a First Amendment claim, gender discrimination claims under Title IX and the Equal Protection Clause, and state law negligence claims. But these claims were all based on the same underlying facts, and Mr. Doe's attorneys pursued each of them in order to achieve a single overarching result: reinstatement of Mr. Doe as a student at GMU and expungement of the two misconduct charges from his record.

At every stage of the lawsuit, Mr. Doe tried in good faith to reach a settlement that would achieve this end without continuing to pile up legal fees.  Defendants—for reasons entirely apart from the honest efforts of their counsel—did not do the same.  As each successive attempt to settle failed, Mr. Doe's attorneys redoubled their efforts to keep the mounting costs down.  For example:

- **Mr. Doe's attorneys took only two depositions**, those of Defendants Ericson and Blank-Godlove, forgoing other possibly helpful, but costly, depositions.  He even went to so far as to not depose Defendant Cabrera, despite Cabrera's being a party in the case.

- **Mr. Doe's attorneys pursued summary judgment**—despite some risk that a dispute of material fact might be found—in order to save the expense of a trial.  They even spoke with Defendants' counsel about filing cross-motions for partial summary judgment much earlier in the case to narrow the issues that might go to trial.

- **Mr. Doe's attorneys** shifted the overwhelming majority of time-intensive tasks, such as the research and drafting of motions to **a single low-cost associate**.

In short, Mr. Doe's attorneys did everything they could to minimize costs without sacrificing Mr. Doe's ability to ultimately prevail.

And Mr. Doe did prevail.  After granting Mr. Doe summary judgment on his procedural due process and First Amendment claims, this Court not only ordered Defendants to reinstate him and expunge from his record the two charges on which he was expelled, but also enjoined Defendants from attempting a "do-over" hearing of the charges on which Mr. Doe had already been found not responsible in the initial disciplinary hearing.  And this Court went even further, ordering Defendants to adjudicate any new allegations by Ms. Roe *to completion* within 60 days.  Thus, in fewer than 60 days, Mr. Doe hopes that he will finally be able to put this episode behind him and move forward with his life.

Having secured at last this excellent, but hard-fought, victory, Mr. Doe now moves—pursuant to 42 U.S.C. § 1988—for an award of the $284,764.75 in attorneys' fees and costs he was forced to incur to achieve it.[1]

## ARGUMENT

Under 42 U.S.C. § 1988, a "prevailing party" may recover "'a reasonable attorney's fee' . . . in certain civil rights actions, including suits brought under [42 U.S.C. §] 1983." Lefemine v. Wideman, 758 F.3d 551, 555 (4th Cir. 2014) (quoting 42 U.S.C. § 1988(b)).  A plaintiff satisfies the "threshold" requirement of being a "prevailing party" simply by "succeed[ing] on any significant issue in [the] litigation which achieves some of the benefit the [plaintiff] sought in bringing suit."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-279 (1st Cir. 1978)); see also Mercer v. Duke Univ., 401 F.3d 199, 203 (4th Cir. 2005) ("[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." (quoting Farrar v. Hobby, 506 U.S. 103-111-112 (1992)).

There can be no doubt that Mr. Doe is a "prevailing party" eligible for an award of attorneys' fees under § 1988.  This Court granted summary judgment in Mr. Doe's favor on the merits of both his procedural due process and First Amendment claims under § 1983, and issued an injunction ordering Defendants to, among other things, reinstate Mr. Doe as a student at GMU.  Mr. Doe has clearly succeeded on the merits of these claims, and the Court's order that

---

[1] The attorneys' fees and costs requested in this motion are limited to those for which Mr. Doe has already been invoiced, and for which Mr. Doe has already paid his attorneys: those services rendered before April 1, 2016.  Mr. Doe will supplement this motion for work performed and costs incurred in the month of April 2016—including fees incurred in preparing this motion—following the issuance of an invoice for this work soon after the beginning of May.

Mr. Doe be reinstated "modifies the defendant[s'] behavior in a way that directly benefits [Mr. Doe]." Mercer, 401 F.3d at 203.

Because Mr. Doe is a prevailing party, he is presumptively entitled to reasonable attorneys' fees. See Hensley, 461 U.S. at 429 (holding that a "prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust" (internal quotation marks omitted)); see also Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 174 (4th Cir. 1994) (quoting this language in Hensley). Here, Defendants can point to no "special circumstances" that would render the award of *any* attorneys' fees unjust. See, e.g., Lefemine, 758 F.3d at 555-56 (discussing, as one example of a special circumstance barring any recovery of attorneys' fees, a case in which a *pro se* plaintiff, who was also an attorney, sought fees to compensate himself). District courts in the Fourth Circuit have rejected assertions that such special circumstances include the fact that a plaintiff "could well afford to hire [his] own lawyers," that a defendant "acted in good faith," or that a defendant was entitled to qualified immunity. Id. (describing cases).

Because it is clear that Mr. Doe is a prevailing party entitled to attorneys' fees under § 1988, and because there are no special circumstances barring recovery of reasonable attorneys' fees, it remains only to decide what amount in attorneys' fees is reasonable in this case.

## I.      MR. DOE SHOULD RECOVER ALL OF THE ATTORNEYS FEES HE PAID, BECAUSE THE BILLING RATES HIS ATTORNEYS CHARGED AND THE AMOUNT OF TIME THEY WORKED ON THE CASE ARE REASONABLE, AND BECAUSE MR. DOE'S ATTORNEYS ACHIEVED EXCELLENT RESULTS IN THE LITIGATION.

The Fourth Circuit has explained the three-step process by which a district court is to determine the amount of attorneys' fees that are reasonable in any given case:

> First, the court must determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate.  To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in <u>Johnson v. Georgia Highway Express Inc.</u>, 488 F.2d 714, 717–19 (5th Cir. 1974). Next, the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones.  Finally, the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.

<u>McAfee v. Boczar</u>, 738 F.3d 81, 88 (4th Cir. 2013) (citations and internal quotation marks omitted).

Mr. Doe will address each step of this analysis in detail below, but his position in sum is this:  because the billing rates his attorneys charged and the number of hours they worked were both reasonable, those amounts should form the basis of the lodestar figure.  That lodestar figure should be not be reduced at the second step of the analysis, because the claims on which he was unsuccessful—his substantive due process, gender discrimination, and state law negligence claims—were based on the same core facts as the procedural due process and First Amendment claims, on which he was successful.  Nor should the lodestar figure be reduced at the third step of the analysis, because he achieved an excellent result in the litigation.

**A. The Lodestar Figure Should Be Calculated Using the Rates Charged by Mr. Doe's Attorneys and the Hours Expended by Them, Because Both Are Reasonable in Light of the <u>Johnson</u> Factors.**

To meet his evidentiary burden on the lodestar figure, Mr. Doe has submitted with this motion three types of evidence: (1) detailed billing invoices with time entries showing the amount of time his attorneys worked on the various tasks in the case, as well as the billing rates for the attorneys that completed these tasks; (2) the declaration of Justin Dillon—the lead attorney on Mr. Doe's case throughout the overwhelming majority of the litigation—explaining the rates charged, and discussing the special campus disciplinary practice at the law firm Mr. Doe retained in this case, Kaiser, LeGrand & Dillon PLLC (hereinafter "Kaiser, LeGrand &

Dillon"); and (3) the declaration of Craig C. Reilly—an independent attorney with substantial knowledge of the prevailing market rates for attorneys litigating civil cases in the Eastern District of Virginia—comparing the rates Mr. Doe's attorneys charged with those that other attorneys charge in similar cases in this district.

The information contained in these three sources—considered in light of the Johnson factors discussed below—is sufficient to meet Mr. Doe's burden of producing "satisfactory specific evidence" of the hours reasonably worked and the rates reasonably charged.  See, e.g., Plyler v. Evatt, 902 F.2d 273, 277-278 (4th Cir. 1990) (noting that a fee applicant had offered sufficient evidence where he had submitted, in addition to his attorneys' own "affidavits testifying to their . . . rates, experience, and skills," the "affidavits of [other] lawyers [in that state] who were familiar both with the skills of some of the applicants and more generally with civil rights litigation in the [state]").  Because—as this documentation shows—Mr. Doe's attorneys charged reasonable rates and expended a reasonable number of hours on the case, those rates and hours should form the basis of the lodestar calculation.

Before turning specifically to the rates charged and the hours worked by Mr. Doe's attorneys in this case, it is appropriate to note the twelve Johnson factors by which those rates and hours should be judged.  Those factors, as described and adopted by the Fourth Circuit in Barber v. Kimbrell's Inc., are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

6

577 F.2d 216, 226 n.28 (4th Cir. 1978).

While this Court "need not address in detail every single one of these factors," see, e.g.,

Dollar Tree Stores, Inc. v. Norcor Bolingbrook Assocs., LLC, 699 F. Supp. 2d 766, 768 (E.D.

Va. 2009), it should certainly consider those that are relevant to the particular facts of this case.

The fifth factor, "the customary fee for like work," is discussed in Part I.A.1, *infra*, as that

section addresses the rates charged by Mr. Doe's attorneys, as well as in detail throughout Craig

C. Reilly's declaration.  Likewise, the first factor, "the time and labor expended," is discussed in

Part I.A.2, *infra*, as that section relates directly to the number of hours worked by Mr. Doe's

attorneys.

### 1. Mr. Doe's Attorneys Charged Reasonable Hourly Rates.

Mr. Doe is seeking compensation for the time spent by his attorneys at hourly rates

ranging from $245 per hour, for the least expensive associates, to $445 per hour for the most

expensive partner.[2]  The following table shows the rates Mr. Doe paid for the six attorneys who

did billed work on his case.[3]

---

[2] As the billing invoices show, these rates did not change during the litigation.  See Dillon Decl. at 3-4 (noting that the hourly rates that Mr. Doe was charged throughout the case were the standard rates charged by attorneys at Kaiser, LeGrand & Dillon at the time the firm began to represent him in December 2014).  As noted in Mr. Dillon's declaration, the standard rates charged for attorneys at Kaiser, LeGrand & Dillon have since increased.  But, in accordance with the firm's general practice of not increasing a client's rates during the representation, the rates charged to Mr. Doe remained the same throughout the representation.  See id.

[3] One additional attorney at Kaiser, LeGrand & Dillon, Scott Bernstein, did 2.7 hours of work on Mr. Doe's case during the discovery process.  But this work was not billed to Mr. Doe and, accordingly, has not been included in this fee request.

| *Name* | *Initials on Invoices* | *Hourly Rate* |
|---|---|---|
| Matthew G. Kaiser | MK | $445 |
| Justin Dillon | JD | $385 |
| Rebecca S. LeGrand | RL | $385 |
| Christopher G. Muha | CM | $325 |
| Allison Lansell | AL | $245 |
| Adam R. Zurbriggen | AZ | $245 |

In addition to these six attorneys, one paralegal, Jacob Clark (abbreviated on the billing invoices as "JC"), did billable work on the case, at a rate of $95 per hour.

Craig C. Reilly—an independent attorney with knowledge of the market rates in the Eastern District of Virginia—analyzed these attorney and paralegal rates.  Mr. Reilly "reviewed the pleadings and memoranda opinions, reviewed the invoices from [Mr. Doe's] lawyers, reviewed the credentials and experience of the lawyers and paralegal for [Mr. Doe], researched comparable rates from published cases and other publicly available sources, analyzed the local legal market for comparable hourly rates, and interviewed other local lawyers whose practice includes plaintiffs' civil rights cases."  See Reilly Decl. at 2.

After conducting this analysis, Mr. Reilly concluded—as explained in detail in his declaration—that the rates charged by Mr. Doe's attorneys were "reasonable," as they were "in line with the prevailing market rates in this region for the type of legal work involved in this action, and appropriate in light of each lawyer's skills, experience, reputation, and work in the case."  See Reilly Decl. at 7-8 (internal quotation marks omitted).

Relevant to the third and ninth Johnson factors—the skill required to properly perform the legal services rendered, and the experience, reputation and ability of the attorney, respectively—Mr. Reilly points out that Kaiser, LeGrand & Dillon "has a specialty practice in

'Campus Sexual Assault Defense.'"  See Reilly Decl. at 5-6 (noting that "[t]his is an important

factor because an attorney (even if from out-of town) possessed of specialized skills and

experience in a narrow area of the law, may command a higher hourly rate than locally

prevailing general civil litigation rates." (citing Colonial Williamsburg Fndn. v. The Kittinger

Co., 38 F.3d 133, 138 (4th Cir. 1994); Sun Pub. Co. v. Mecklenburg News, Inc., 594 F. Supp.

1512, 1518-19 (E.D. Va. 1984)).

Skillfully litigating a campus disciplinary case not only requires knowledge of, and

experience with, the legal concepts surrounding Title IX and procedural due process; it also

requires a deep understanding of the campus sexual misconduct process (in its numerous

variations), and of the Title IX guidance from the Department of Education's Office for Civil

Rights that informs this process.

Here, as discussed in detail in Mr. Dillon's declaration, Mr. Doe's attorneys at Kaiser,

LeGrand & Dillon have a specialty in representing students accused of campus sexual assault.

See generally Dillon Decl. at 2-3.  Mr. Dillon, who managed and led the litigation for virtually

the entire life of the case, has represented dozens of students accused of sexual assault on college

campuses, both in the disciplinary proceedings themselves and in litigation arising out of those

proceedings.  See id. at 3.  He has also written—along with Matthew G. Kaiser, another attorney

at Kaiser, LeGrand & Dillon who worked on Mr. Doe's case—numerous op-ed articles in

national newspapers discussing the campus disciplinary process, and spoken at several

conferences about the same.  See id. at 3.  Such attorneys, as Mr. Reilly attests, "are not

reasonably available in Northern Virginia."  Reilly Decl. at 12.  That is important to bear in mind

in considering whether the rates charged by Mr. Doe's attorneys are reasonable.

### 2.  Mr. Doe's Attorneys Expended a Reasonable Amount of Time on the Case.

The following table shows the number of hours worked by each of the six attorneys[4]

whose time on the case was billed to Mr. Doe:

| Name | Initials on Invoices | Number of Hours | Hourly Rate | Total Fee for Attorney |
|------|------|------|------|------|
| Adam R. Zurbriggen | AZ | 601.85 | $245 | $147,453.25 |
| Justin Dillon | JD | 201.80 | $385 | $77,693.00 |
| Allison Lansell | AL | 138.30 | $245 | $33,883.50 |
| Matthew G. Kaiser | MK | 38.00 | $445 | $16,910.00 |
| Christopher G. Muha | CM | 19.70 | $325 | $6,402.50 |
| Rebecca S. LeGrand | RL | 2.60 | $385 | $1,001.00 |
| **TOTAL** | -- | **1,002.25** | -- | **$283,343.25** |

These hours are reasonable, particularly in light of the second <u>Johnson</u> factor, the

"novelty and difficulty of the questions raised."  <u>Barber</u>, 577 F.2d at 226 n.28.  Mr. Doe's case

involved a number of complicated and unsettled points of law, including:

- Whether a student expelled from a public university has **a liberty interest** in his reputation.  This question is still unresolved by the Fourth Circuit.  After this Court ordered a round of supplemental briefing, specifically to address this question, it found in Mr. Doe's favor.  <u>See</u> Mem. Op., Sept. 16, 2015 (ECF No. 50) at 10-15.  Another district court within the Fourth Circuit, faced with the exact same question, reached the opposite conclusion.  <u>See</u> <u>Doe v. Alger</u>, No. 5-15-cv-35, 2016 WL 1274025, at *12 (W.D. Va. Mar. 31, 2016).

- What the **appropriate remedy** is for a student who was found not responsible for sexual assault in a hearing that met the requirements of due process, but who was convicted— for the first time on appeal—in an appeal process that violated due process.

---

[4] Again, in addition to the work done by these six attorneys, one paralegal, Jacob Clark, assisted Mr. Doe's attorneys during the discovery process, doing 8.3 hours of work at a rate of $95 per hour.  Mr. Doe therefore paid $788.50 for Mr. Clark's work.

Moreover, as can be seen from the billing records, every effort was made to keep costs to a minimum, without sacrificing Mr. Doe's ability to prevail in the lawsuit.  For example:

- **Mr. Doe's attorneys took only two depositions**, those of Defendants Ericson and Blank-Godlove, forgoing costly depositions of GMU's president, Angel Cabrera; of other GMU officials involved in the case, such as Andre Clanton or the Sexual Misconduct Board members; or of Ms. Roe herself.

- **Mr. Doe's attorneys successfully pursued summary judgment** despite some risk of a dispute of material fact, in order to save the expense of a trial.  Indeed, as the billing records show, Mr. Doe pursued partial summary judgment even before discovery in earnest began, but these efforts were dashed when Defendants would not agree to a set of stipulated facts that Mr. Doe had drafted.

- **Mr. Doe's attorneys** shifted the overwhelming majority of time-intensive tasks, such as the research and drafting of motions, to **a single low-cost associate, Adam Zurbriggen**.

The amount in fees saved just by the third of these three efforts—shifting the bulk of the research and drafting to Mr. Zurbriggen—is staggering.  The table below compares—for several major, time-intensive tasks in case—the number of hours expended by Mr. Zurbriggen (whose fee of $245 per hour is the lowest at the firm), with that of the partner and lead counsel, Mr. Dillon (whose fee is $385 per hour):

| Task (Each Including Research, Drafting, and Discussion Before Filing) | Hours Spent by Adam Zurbriggen | Hours Spent by Justin Dillon |
|---|---|---|
| Mr. Doe's Response to Defendants' Motion to Dismiss (ECF No. 32) | 72.1 | 3.7 |
| Mr. Doe's Supplemental Brief on Liberty Interest (ECF No. 38) | 25.2 | 5.2 |
| Mr. Doe's Motion for Summary Judgment (ECF No. 72)[5] | 42.9 | 1.5 |
| Mr. Doe's Brief Proposing a Remedy (ECF No. 94) | 39.45 | 6.5 |

Moreover, as the partner responsible for billing on the case, Mr. Dillon exercised good billing judgment, writing off rather than billing Mr. Doe for time that was excessive, redundant, or otherwise unnecessary.  See Hensley, 461 U.S. at 434 (noting that attorneys should use "billing judgment" to "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours," and that time "not properly billed to one's *client* also [is] not properly billed to one's *adversary* pursuant to statutory authority."); Dillon Decl. at 4.  As the billing records and Mr. Dillon's declaration show, Mr. Dillon wrote off a total of 25.9 hours of legal work.  See Dillon Decl. at 4.

---

[5] As the billing invoices show, Mr. Zurbriggen conducted much of the research and drafting needed for Mr. Doe's successful summary judgment motion during an earlier effort—prior to discovery—to move for partial summary judgment on Mr. Doe's procedural due process and First Amendment claims.  While this effort was aborted when Defendants would not agree to a stipulation of facts, the time spent researching and drafting the partial summary judgment motion proved useful in successfully moving for summary judgment later, after discovery.  Nonetheless, the research and drafting work conducted during the earlier effort is not included in the figure on this table.

**B.  The Lodestar Figure Should Not Be Adjusted Downward, As Mr. Doe's Unsuccessful Claims Are Closely Related To His Successful Ones.**

Having determined that the lodestar figure in this case is simply the fees Mr. Doe paid his attorneys, the next step is to "subtract fees for hours spent on unsuccessful claims *unrelated to successful ones*." McAfee, 738 F.3d at 88 (emphasis added).  But the Supreme Court has cautioned—specifically in the context of fee awards under § 1988—that the lodestar figure should only be reduced, at this step of the analysis, when there are unsuccessful claims are based on entirely unrelated *facts*, not where the plaintiff pled different legal theories around a common core of facts:

> Many civil rights cases will present only a single claim.  In other cases the plaintiff's claims for relief will **involve a common core of facts or will be based on related legal theories.**  Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  **Such a lawsuit cannot be viewed as a series of discrete claims.**  Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . .  **In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.**

Hensley, 461 U.S. at 435 (emphasis added).

Following the direction of Hensley, both the Fourth Circuit and district courts within the Fourth Circuit have refused to reduce the lodestar figure where different legal theories were raised around the same "common core of facts," even if the facts supporting those claims do not overlap entirely.  See Abshire v. Walls, 830 F.2d 1277, 1283-83 (4th Cir. 1987) (holding that where a plaintiff had prevailed on a § 1983 claim challenging an improper strip search, the district court erred by reducing the fee award for hours spent on plaintiff's unsuccessful claims for false arrest, false imprisonment, and malicious prosecution, noting that while "the

[unsuccessful] claims were based on different legal theories," the "facts surrounding [the plaintiff's] strip search were inextricably intertwined with the facts surrounding his initial confrontation with the police, his arrest and later imprisonment," and thus the claims were not unrelated); Prison Legal News v. Stolle, 129 F. Supp. 3d 390, 404 (E.D. Va. 2015) (holding that where a plaintiff had challenged two prison policies excluding the same magazine from circulation within the prison, resulting in the district court issuing an injunction enjoining the prison from applying one of those policies, the lodestar figure should not be reduced based on the unsuccessful claim that the second policy was impermissible).

As in both Abshire and Prison Legal News, all of the claims raised in Mr. Doe's lawsuit—successful and unsuccessful—revolve around a common core of facts: his expulsion from GMU on two charges arising out of Ms. Roe's allegations that he sexually assaulted her and sent her a disturbing text message.  While he raised a number of different legal theories as to why Defendants' expulsion of him was illegal, these theories—which included procedural and substantive due process claims, a free speech claim, gender discrimination claims under Title IX and the Equal Protection Clause, and negligence claims under state law—each challenged one or both of these charges.

And importantly, this Court ultimately held that the findings on *both* charges were illegal and must be reversed.  Therefore, under Hensley, this Court should not reduce the lodestar figure, but "[i]nstead . . . should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  Hensley, 461 U.S. at 435.  In other words, this Court should proceed to the third and final step of the analysis.

**C. The Lodestar Calculation Should Not Be Reduced for Lack of Success, As Mr. Doe's Attorneys Achieved An Excellent Result and the Litigation Served an Important Public Purpose.**

The final step of the analysis requires this Court to determine the "degree of success enjoyed by the plaintiff." McAfee, 738 F.3d at 88. In a case such as this one, where the plaintiff sought and obtained injunctive relief, a court determines the degree of success by comparing "the scope of the injunctive relief sought to the relief actually granted." Mercer, 401 F.3d at 205.

Here, Mr. Doe achieved an excellent result. He sued Defendants seeking, primarily, an injunction ordering Defendants to reinstate him and expunge the two disciplinary charges on which he was found responsible. Specifically, in his Second Amended Complaint, Mr. Doe requested the following injunctive relief:

> That this Court issue preliminary and permanent injunctive relief restraining George Mason University (1) from continuing to enforce any punishment against Plaintiff, and (2) from making any notation on Plaintiff's transcript, or keeping any record related to his disciplinary hearing in Plaintiff's educational records, as its sanctions were the product of an erroneous finding that Plaintiff violated the Code, which was itself the product of a flawed disciplinary process.

2d Am. Compl. (ECF No. 27) at 37-38.

Mr. Doe obtained this relief and then some. After granting him summary judgment on his procedural due process and First Amendment claims, this Court reinstated Mr. Doe and directed Defendants to remove the findings of responsibility on both charges for which he was expelled. See Order, Apr. 14, 2016 (ECF No. 100, hereinafter "Final Order") at 2 (directing defendants to "remove from [Mr. Doe's] educational records at [GMU] any record or notation reflecting a finding of misconduct relating to [Mr. Doe's] December 2014 expulsion," and to "reinstate [Mr. Doe] as a student at [GMU]").

In addition to ordering this relief, which Mr. Doe sought from the outset of the litigation, this Court also enjoined Defendants from further pursuing any disciplinary proceedings on the

charges for which Mr. Doe had been found not responsible by GMU's Sexual Misconduct Board, namely Ms. Roe's October 27, 2013, sexual assault allegation and the March 2014 text message charge. See Final Order at 2 (noting that "defendants and their successors are **ENJOINED** from permitting further disciplinary action against [Mr. Doe]" for these allegations). As this Court explained in its opinion on the remedies issue, "the accusations stemming from [these incidents] have been fully and fairly resolved in [Mr. Doe's] favor," and "[Mr. Doe] is entitled to have his victory restored." Mem. Op., Apr. 14, 2016 (ECF No. 99, hereinafter "Remedies Op.") at 8. Obtaining this relief is a great victory for Mr. Doe because it prevents GMU from further considering Ms. Roe's appeal on these charges or even conducting a "do over" hearing before the Sexual Misconduct Board on them.

Even Mr. Doe's most ambitious request for injunctive relief resulted in a partial victory. Mr. Doe requested—in his Brief Proposing a Remedy—that GMU also be barred from pursuing other allegations of sexual assault made by Ms. Roe prior to the date of the initial Sexual Misconduct Board hearing. Vague allegations of this sort, as this Court will recall, had been made by Ms. Roe during the Board hearing and in her appeal of the Board's decision, and Defendant Ericson had violated Mr. Doe's procedural due process rights by finding Mr. Doe responsible on this basis. See Mem. Op., Feb. 25, 2016 (ECF No. 92) at 14 (noting that "[Mr. Doe was expelled for sexual misconduct occurring on dates other than October 27, 2013"). While this Court did not agree with Mr. Doe that GMU should be barred from pursuing any charges arising out of Ms. Roe's vague allegations, this Court—receptive to Mr. Doe's asserted concerns that the passage of time would prejudice his defense—required GMU to bring *and adjudicate to completion* such charges within the short window of 60 days. See Final Order at 2-3 ("[A]s of June 14, 2016, defendants and their successors are **ENJOINED** from permitting

disciplinary actions to proceed against [Mr. Doe] relating to any accusation or allegation by Jane

Roe of sexual misconduct that is alleged to have occurred before August 19, 2014."); Remedies

Op. at 12 (noting, in explaining the 60-day time limit, that Mr. Doe's "argument—that he will

suffer unfair prejudice by the delay in bringing further charges relating to Roe's allegations—is

far from insubstantial").

 This aspect of the Court's order is an extraordinary win for Mr. Doe.  It secures a time

certain after which Mr. Doe will be able to put the events of this case behind him and move on

with his life.  Without this Court's order on this point, Ms. Roe could have brought new charges

at any time, as there is no statute of limitations on sexual misconduct allegations under GMU's

Code of Student Conduct.

 At the outset of the case, Mr. Doe did seek monetary damages, which—because of

qualified immunity—he was unable to recover.  But this Court should not reduce the lodestar

figure on this basis for at least two reasons.  **First**, Mr. Doe's actions during the litigation show

that his recovery of monetary damages was, if not a mere afterthought, clearly secondary to

obtaining injunctive relief such as reinstatement.  See Mercer, 401 F.3d at 205 (holding that "the

purpose of the lawsuit" is to be considered in determining the plaintiff's degree of success,

though also noting that it is the relief "*sought*" not merely the relief that "was *most important*"

that must be considered); cf. also McAfee, 738 F.3d at 93 (reducing the lodestar figure because

of the plaintiff's failure to recover more than out-of-pocket expenses in monetary damages, but

noting that the "the record . . . suggest[ed] her pursuit of a bigger payday was sincere, even

pointed," because she had pushed for substantial monetary damages at trial).

 Here, unlike in McAfee, Mr. Doe did not go to great lengths to press his claim for

monetary damages.  For example, when this Court held that Defendants were entitled to qualified

immunity on Mr. Doe's procedural due process claim because it was not clearly established that he had a liberty interest, Mr. Doe turned down an invitation from this Court to attempt to plead the existence of a property interest that might survive qualified immunity.  See Mem. Op., Sept. 16, 2015 (ECF No. 50) at 10 (noting that "[a]lthough Mr. Doe ha[d] not yet cited any basis in Virginia law for a protected property interest in his GMU enrollment, it is also appropriate to allow [him] leave to amend to attempt to rescue this claim).  Clearly, Mr. Doe's attorneys spent relatively little time pressing claims for monetary damages.  See, e.g., Pl.'s Resp. to Defs.' Mot. to Dismiss (ECF No. 32) at 28 (addressing Defendants' arguments in favor of granting qualified immunity in about one and a half pages of a 30-page brief).

**Second**, the Fourth Circuit has held that—given § 1988's overarching purpose of preventing civil rights plaintiffs from being discouraged from bringing suit by the costs of litigation—qualified immunity should not be a "special circumstance" making the recovery of *any* attorneys' fees unjust.  See Lefemine, 758 F.3d at 557 (reversing district court that held that defendants' entitlement to qualified immunity was a "special circumstance" that barred plaintiff from recovering any attorneys' fees, and noting that "special government immunities that restrict civil rights plaintiffs' recoveries *weigh in favor of—and certainly not against*—awarding Section 1988 fees." (emphasis added)).  While Lefemine did not squarely address whether a defendant's entitlement to qualified immunity should serve as a basis for reducing the lodestar figure at the "degree of success" step of the analysis, the same policy reasons strongly suggest that it should not: a civil rights plaintiff in Mr. Doe's situation, already facing the possibility that he will be prevented from recovering monetary damages as a result of qualified immunity, should not be further discouraged from bringing suit by the knowledge that a finding of qualified immunity will hinder his ability to recover his attorneys' fees.

One final point bears considering when determining the degree to which Mr. Doe's lawsuit was successful: the suit furthered the public interest, establishing precedent on points of law which were both previously unsettled and certain to recur, given the current climate surrounding sexual misconduct on campus.  See Mercer, 401 F.3d at 206-207 (holding that a prevailing plaintiff in a Title IX discrimination case could recover attorneys' fees despite failing to recover more than nominal damages, and noting that she had "succeeded on a significant legal issue," her case being "the first to so hold" on that issue, and that this "first-of-its kind liability determination," would vindicate the public interest by "serv[ing] as guidance for other schools facing the issue"); Sheppard v. Riverview Nursing Ctr., Inc., 88 F.3d 1332, 1336 (4th Cir. 1996) (quoting Justice O'Connor's concurring opinion in Farrar, 506 U.S. at 121-22, for the proposition that "a plaintiff's 'success might be considered material if it also accomplished some public goal other than occupying the time and energy of counsel, court, and client'").

As in Mercer, Mr. Doe's case was the "first-of-its kind."  It was the first campus sexual misconduct case in which the accused student prevailed on the merits at summary judgment. And as such, it established critical points of law previously undecided, including—as discussed above—the issue of whether an expulsion for sexual misconduct implicates a student's liberty interest, and the proper remedy for a student who was found not responsible in a hearing consistent with due process, but whose due process rights were violated when that decision was reversed on appeal.  This Court can and should consider the public interest served by Mr. Doe's lawsuit in determining the degree to which it was successful.

## II.    MR. DOE IS ALSO ENTITLED TO RECOVER HIS REASONABLE LITIGATION COSTS UNDER 42 U.S.C. § 1988.

As part of the attorneys' fee award pursuant to § 1988, "a prevailing plaintiff is entitled to compensation for reasonable litigation expenses."  Daly v. Hill, 790 F.2d 1071, 1084 (4th Cir. 1986) (noting that "[b]ecause meritorious civil rights plaintiffs are 'private attorneys general' . . . , § 1988 is intended to encourage them to bring suit by shifting the costs of litigation to defendants who have been found to be wrongdoers," and noting that awards of such fees are not limited by the standards used to evaluate expenses under 28 U.S.C. § 1920 or Federal Rule of Civil Procedure 54(d)); see also Dowdell v. City of Apopka, Fla., 698 F.2d 1181, 1192 (11th Cir. 1983) ("[A]ll reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988.").

The litigation costs incurred in this case are set forth in detail in Mr. Dillon's declaration. See Dillon Decl. at 5-6 (noting that receipts for these expenses are attached as Exhibit 2 to the declaration).

## CONCLUSION

Mr. Doe's case is the rare sort where a plaintiff faces complicated facts and unsettled questions of law, yet still proceeds through to the merits and achieves an excellent result.

As the first student expelled for sexual misconduct to prevail on the merits at summary judgment, Mr. Doe overcame numerous hurtles.  He prevailed, in part, because his attorneys successfully argued that students in his situation have a protected liberty interest, a point on which a similarly situated student, litigating a procedural due process claim in a neighboring district, did not prevail.  He prevailed, in part, because his attorneys—through extensive preparation and skill—were able to obtain key admissions from Defendant Ericson that allowed this case to be decided on summary judgment.  And he obtained all but the most ambitious

injunctive relief that he sought, in part, because his attorneys were able to highlight the uniqueness of Mr. Doe's case as one in which he had initially prevailed at the hearing level, and one in which the passage of time would seriously prejudice his ability to defend himself.

With a doubt, Mr. Doe would have preferred to achieve this excellent result—or perhaps even something short of it—without having to endure almost a year and a half of litigation, and without having to spend nearly $300,000 in legal fees and costs. To that end, he made good-faith efforts to settle, which Defendants did not reciprocate. His attorneys then did everything in their power to minimize fees and costs.

Having finally prevailed, Mr. Doe cannot get the last year and a half of his life back, but he can, under § 1988, recover the attorneys' fees and costs he was forced to incur, just to put this incident behind him and finish his education.

Those attorneys' fees and costs can be summarized as follows:

| Name or Cost Description | Initials on Invoices (if applicable) | Number of Hours (if applicable) | Hourly Rate (if applicable) | Total Fee or Cost |
|---|---|---|---|---|
| Adam R. Zurbriggen | AZ | 601.85 | $245 | $147,453.25 |
| Justin Dillon | JD | 201.80 | $385 | $77,693.00 |
| Allison Lansell | AL | 138.30 | $245 | $33,883.50 |
| Matthew G. Kaiser | MK | 38.00 | $445 | $16,910.00 |
| Christopher G. Muha | CM | 19.70 | $325 | $6,402.50 |
| Rebecca S. LeGrand | RL | 2.60 | $385 | $1,001.00 |
| Jacob Clark | JC | 8.30 | $95 | $788.50 |
| Lawsuit Filing Fee | -- | -- | -- | $400.00 |
| Messenger Services | -- | -- | -- | $233.00 |
| **GRAND TOTAL** | -- | -- | -- | **$284,764.75** |

Accordingly, Mr. Doe asks this Court to enter an order awarding him these attorneys' fees and costs in full, in the amount of $284,764.75, plus the amount he will specify in supplemental briefing after future invoices are submitted.

April 29, 2016                                             Respectfully submitted,


                                                          /s/
                                                          Justin Dillon (Va. Bar No. 48233)
                                                          Adam R. Zurbriggen (Va. Bar No. 88666)
                                                          Kaiser, LeGrand & Dillon PLLC
                                                          1401 K Street NW, Suite 600
                                                          Washington, DC 20005
                                                          (202) 640-2850
                                                          (202) 280-1034 (facsimile)
                                                          jdillon@kaiserlegrand.com
                                                          azurbriggen@kaiserlegrand.com
                                                          *Attorneys for Plaintiff John Doe*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 29, 2016, the foregoing Motion for Attorneys' Fees and Costs Under 42 U.S.C. § 1988 was served on all counsel of record and registered users via the court's electronic filing system.


___/s/_____
Adam R. Zurbriggen