**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:15-cv-209** |
| | ) | |
| **THE RECTOR AND VISITORS OF** | ) | |
| **GEORGE MASON UNIVERSITY,** *et al.*, | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

At issue post-judgment in this Fourteenth Amendment due process and free speech case are plaintiff's first motion and supplemental motion for attorney's fees and costs pursuant to 42 U.S.C. § 1988, which allows "the prevailing party" in an "action or proceeding to enforce a provision of...[42 U.S.C. §] 1983" to collect "a reasonable attorney's fee as part of the costs." Because the question of fees and costs has been fully briefed,[1] oral argument is dispensed with as the facts and arguments are adequately set forth in the record, and oral argument would not aid the decisional process. Moreover, plaintiff waived oral argument on the motions, and defendants did not object to that waiver.

## I.

As the pertinent facts giving rise to this action have been previously recited at length, only a brief summary is necessary here.[2] Plaintiff, a now-reinstated student at George Mason

---

[1] Defendants filed a response in opposition to plaintiff's first motion for attorney's fees, which requests the bulk of the total amount sought. (Doc. 107). The objections raised in that opposition are equally applicable to plaintiff's supplemental motion, which is less a separate motion than an updated (and final) statement of the fees charged to plaintiff. Accordingly, defendants' opposition is construed as a response to both plaintiff's first and supplemental motions.

1

University ("GMU"), was expelled from GMU in December 2014 on findings of sexual misconduct and violation of GMU's student speech code. Plaintiff's expulsion grew out of an unusual set of facts. First, plaintiff contends that the acts allegedly constituting the sexual misconduct for which he was expelled were in fact part of a fully consensual BDSM arrangement with his accuser.[3] Second, following an approximately ten-hour long hearing at which plaintiff and his accuser were given a full and fair opportunity to present their cases, a majority of a GMU sexual misconduct panel consisting of three specially trained faculty and staff members found plaintiff's contention credible and therefore acquitted plaintiff of the misconduct charges levied against him. Third, notwithstanding plaintiff's acquittal before the initial hearing panel, defendant Brent Ericson, GMU's Director of the Office of Student Conduct who had played a significant role in investigating the allegations against plaintiff, (i) permitted plaintiff's accuser to appeal plaintiff's acquittal in violation of GMU policy, (ii) assigned the appeal to himself, (iii) met *ex parte* and off the record with the accuser, and (iv) decided to reverse plaintiff's acquittal and to expel plaintiff before plaintiff was given any meaningful opportunity to present a defense. Defendant Juliet Blank-Godlove, GMU's Dean of Students, affirmed Ericson's decision.[4]

---

[2] A full discussion of the facts giving rise to this lawsuit can be found in *Doe v. Rector & Visitors of George Mason Univ.*, --- F. Supp. 3d ---, 2016 WL 775776 (E.D. Va. Feb. 25, 2016).

[3] BDSM is shorthand for a relationship involving bondage, discipline, dominance, submission, sadism, and masochism.

[4] Ericson and Blank-Godlove, in their official capacities, are the only remaining defendants in this action. Prior defendants included (i) the Rector and Visitors of GMU, (ii) GMU President Angel Cabrera, and (iii) Ericson and Blank-Godlove individually, but these defendants were dismissed on various grounds. *See Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 735 (E.D. Va. 2015); *Doe v. Rector & Visitors of George Mason Univ.*, No. 15-cv-209 (E.D. Va. Apr. 14, 2016) (Order) (Doc. 100). For the sake of simplicity, the remaining defendants are referred to as "GMU."

Plaintiff commenced this action in February 2015, *inter alia*, to enforce his Fourteenth Amendment due process and free speech rights under § 1983.[5] After voluminous briefing at the motion to dismiss stage, plaintiff was left with two viable claims, namely (i) deprivation of liberty without due process of law and (ii) infringement of plaintiff's right to free speech. *See Doe*, 132 F. Supp. 3d at 735. On cross-motions for summary judgment, plaintiff prevailed on both counts. *See Doe*, --- F. Supp. 3d ---, 2016 WL 775776, at *21. Thereafter, an Order issued (i) directing GMU to reinstate plaintiff as a student, (ii) directing GMU to expunge all records of plaintiff's expulsion, and (iii) enjoining GMU from pursuing certain related disciplinary charges unless those charges were pursued to completion within sixty days of the entry of final judgment. *See Doe v. Rector & Visitors of George Mason Univ.*, --- F. Supp. 3d ---, 2016 WL 1574045, at *2-6 (E.D. Va. Apr. 14, 2016).

Plaintiff now seeks attorney's fees and costs pursuant to § 1988. Although § 1988 on its face makes an award of attorney's fees discretionary, it is well-settled that "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal quotations omitted). GMU correctly does not dispute that plaintiff is a prevailing party, D. Opp. at 1, insofar as he "succeed[ed] on [a] significant issue in litigation which achieve[d] some of the benefit [he] sought in bringing suit." *Id.* at 433 (internal quotations omitted). Nor does GMU argue that any special circumstances are present in this case that would render an award of attorney's fees

---

[5] Plaintiff also alleged state law constitutional and tort claims and a claim under Title IX, 42 U.S.C. § 1681 *et seq.*, the latter of which also qualifies for attorney's fees under § 1988. A full discussion of plaintiff's claims can be found in *Doe*, 132 F. Supp. 3d 712.

3

unjust. *See* D. Opp. at 1 n.1. Accordingly, the only issue to decide on plaintiff's motion for attorney's fees and costs is what amount is "reasonable" under § 1988.

## II.

As the Fourth Circuit has explained, "[t]he proper calculation of an attorney's fee award involves a three-step process." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). First, a court must calculate the "lodestar" figure by multiplying the number of reasonable hours expended times a reasonable hourly rate. *Id.* The determination of a reasonable number of hours and a reasonable rate is governed by a twelve-factor analysis. Specifically, a court must consider:

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at 88 n.5. Once the lodestar figure is ascertained, a court must then subtract fees for hours spent on "unsuccessful claims unrelated to successful ones." *Id.* at 88 (internal quotations omitted). And finally, a court "should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.* (internal quotations omitted).

Plaintiff's fee request is reflected in the following chart:

| Attorney/Paralegal Name | Position | Hours Requested | Hourly Rate Charged | Fee Requested |
|---|---|---|---|---|
| Adam R. Zurbriggen | Associate | 682.05 | $245 | $167,102.25 |
| Justin Dillon | Partner | 210.90 | $385 | $81,196.50 |
| Allison Lansell | Associate | 138.30 | $245 | $33,883.50 |
| Matthew G. Kaiser | Partner | 38.00 | $445 | $16,910.00 |
| Christopher G. Muha | Associate | 19.7 | $325 | $6,402.50 |
| Rebecca S. LeGrand | Partner | 2.60 | $385 | $1001.00 |
| Jacob Clark | Paralegal | 8.3 | $95 | $788.50 |
| **TOTAL** | | **1,099.85** | | **$307,284.25** |

4

See Dillon Dec. (Doc. 103), ¶ 15; Dillon Supp. Dec. (Doc. 110), ¶ 8. Plaintiff also requests costs of $667.00, which is the sum of the $400.00 filing fee and $267.00 for messenger services. *See* Dillon Dec., ¶ 18; Dillon Supp. Dec., ¶ 9. Thus, plaintiff's total requested award is $307,951.25.

To calculate the lodestar figure, analysis properly begins by identifying a reasonable number of hours expended and a reasonable hourly rate. Importantly, there is no dispute between the parties that the rates claimed by plaintiff's attorneys are reasonable.[6] *See* D. Opp. at 1-2. The record supports the absence of such a dispute, in that the requested hourly rates are in line with the prevailing market rates in the region for the type of legal work involved in this lawsuit and commensurate with each attorney's skill, experience, reputation, and work in the case. *See* Reilly Dec. (Doc. 104), ¶¶ 20-37. Across the board, plaintiff's attorneys charged hourly rates lower than the hourly rates that have been found "reasonable" for attorneys of comparable experience in civil rights actions in Northern Virginia.[7] Moreover, the hourly rate charged by the associates who performed most of the work on plaintiff's case is also lower than the hourly rate charged by an associate of comparable experience with the local civil rights law firm Victor M. Glasberg & Associates. *See* Reilly Dec., ¶¶ 30, 35. In short, the record reflects that plaintiff's requested hourly rates are (i) customary for the work performed (Factor 5), (ii) appropriate in light of the attorneys' levels of experience (Factor 9), and (iii) consistent with attorney's fee awards in comparable cases (Factor 12). *See McAfee*, 738 F.3d at 88 n.5. Plaintiff's requested rates are all

---

[6] The highest hourly rate charged to plaintiff was $445 by partner Matthew G. Kaiser, who performed only approximately 3.5% of the total billed attorney work. Approximately three-fourths of the billed attorney work was performed by associates charging $245 per hour, with another approximately 20% performed by the lead partner on the case at an hourly rate of $385. *See* Dillon Dec., ¶ 15.

[7] *See* Reilly Dec., ¶ 35 (comparing plaintiff's requested rates to the rates approved in *Taylor v. Republic Servs., Inc.*, No. 12-cv-523, 2014 WL 325169 (E.D. Va. Jan. 29, 2014) and provided for in the Department of Justice's Unadjusted *Laffey* Matrix).

the more reasonable in light of the fact that plaintiff's case presented novel legal questions

(Factor 2), namely whether students at public higher education institutions possess a

constitutionally protected property interest in their enrollment or a constitutionally protected

liberty interest in their reputations with regard to university discipline proceedings.[8] *See Doe*,

132 F. Supp. 3d at 719-27 (surveying the law on this point). Accordingly, plaintiff's requested

rates are reasonable in light of the governing factors as well as by GMU's own admission.

Analysis now turns to the calculation of the reasonable number of hours expended.

Plaintiff requests fees for 1,099.85 hours of attorney work,[9] with a total attorney's fee request of

$307,284.25.[10] *See* Dillon Dec., ¶ 15; Dillon Supp. Dec., ¶ 8. When combined with plaintiff's

requested costs for litigation expenses, the total amount plaintiff seeks is $307,951.25.[11] GMU

objects to plaintiff's requested fee amount on two grounds, specifically (i) that the time entries

are vague and utilize block billing (or "lumping") of tasks and (ii) that the matter was

---

[8] It is worth mentioning that plaintiff's requested rates are lower than comparable rates in the area even though plaintiff's attorneys maintain a specialty practice in campus disciplinary defense, an unsettled area of the law (Factor 3). *See* Reilly Dec., ¶ 16.

[9] This number reflects a 25.9 hour write off by the lead partner on the case. *See* Dillon Dec., ¶ 14.

[10] Plaintiff requests $788.50 for 8.3 hours of work by a paralegal at $95 per hour, which the record reflects is a reasonable rate. *See* Reilly Dec., ¶¶ 23, 30, 34 (surveying reasonable paralegal rates in the region, all of which exceed the hourly rate plaintiff requests). Yet, paralegal fees "are only recoverable to the extent they reflect tasks traditionally performed by an attorney." *Abusamhadaneh v. Taylor*, No. 11-cv-939, 2013 WL 193778, at *17 (E.D. Va. Jan. 17, 2013). Here, the record reflects that 1.8 of the claimed paralegal hours were for work organizing documents rather than performing traditional attorney tasks. *See* Dillon Dec., Ex. 1 at 25. Because these hours are not recoverable, the appropriate paralegal fee is $617.50, representing 6.5 hours at $95 per hour.

[11] Plaintiff's requested expenses are $400 for the lawsuit filing fee and $267 for messenger services, to which GMU did not object. *See also Daly v. Hill*, 790 F.2d 1071, 1084 (4th Cir. 1986) ("[A] prevailing plaintiff is entitled to compensation for reasonable litigation expenses under § 1988.").

overstaffed. Accordingly, GMU proposes a 40% reduction in plaintiff's requested attorney's fee, which would award plaintiff $184,370.55 plus the reasonable litigation expenses.

To begin the assessment of the reasonable hours charged, the time and labor expended by plaintiff's counsel in this action must be viewed in light of three important facts about this case. First, the hours expended resulted in plaintiff's obtaining significant injunctive relief (Factor 8). Second, the parties were twice directed to file supplemental briefs, which necessitated additional research and writing and, by extension, more billed hours.[12] Moreover, the directed briefing was on novel legal issues (Factor 2), namely the constitutionally protected interests of a student subjected to state higher education disciplinary proceedings and the appropriate remedy for a student who is wrongfully expelled from a state higher education institution as a result of a constitutionally defective appeal following an initial hearing that comports with the requirements of due process. Third, the record reflects that plaintiff's attorneys took extensive measures to reduce the amount of time billed. These measures included (i) taking only two depositions, (ii) engaging in a lengthy and good faith effort to settle the case, and (iii) working with counsel for GMU to streamline litigation by pursuing summary judgment, including a good faith attempt to agree to a set of stipulated facts that would have permitted summary judgment at an early stage of the case. Although the attempts at settlement and stipulating to facts did not bear fruit, it is appropriate that plaintiff's counsel be compensated for their efforts in order to encourage counsel to undertake attempts to expedite the resolution of litigation. In sum, the record reflects that plaintiff's attorneys made significant efforts to reduce the amount of the time and labor

---

[12] *See Doe v. Rector & Visitors of George Mason Univ.*, No. 15-cv-209 (E.D. Va. May 22, 2015) (Order) (Doc. 37) (directing supplemental briefing on constitutionally protected liberty interests); *Doe v. Rector & Visitors of George Mason Univ.*, No. 15-cv-209 (E.D. Va. Feb. 25, 2016) (Order) (Doc. 93) (directing briefing on a remedy).

expended, did so while engaging with novel questions in a developing area of the law, and ultimately obtained significant relief for plaintiff.

At the same time, plaintiff's attorneys were surely aware at the outset of this litigation that, if plaintiff prevailed, they would seek fees under § 1988 (Factor 6). It is well settled that a prevailing party seeking fees from an opponent should avoid block billing and vague entries, as such time-keeping methods frustrate the ability of a court to assess the reasonableness of the hours expended. *See, e.g., Route Triple Seven Ltd. P'ship v. Total Hokey, Inc.*, 127 F. Supp. 3d 607, 621-22 (E.D. Va. 2015) (noting that when block billing and vague entries are present, "courts must exercise sound judgment based on knowledge of the case and litigation experience to reduce the number of hours by an appropriate percentage"). In this respect, GMU's objection to block billing entries and vague task descriptions is appropriate. Yet, the time records here fall far short of warranting the 25% across the board reduction that GMU proposes. Indeed, vagueness poses little problem on this record. Although there are instances in which more detail might have been provided, plaintiff's attorneys' descriptions of tasks performed are in significant respect adequate, as the records specifically identify the issues that were researched, the portions of pleadings that were drafted, and the topics discussed in meetings.[13] Accordingly, vagueness does not hinder the reasonableness analysis here, and therefore no vagueness reduction is warranted.

---

[13] For a sample of the specificity of billing entries, *see, e.g.,* Dillon Dec., Ex. 1 at 8 ("Revised the motion for summary judgment; specifically, incorporated relevant excerpts from the deposition testimony in the case and documents produced by the University into due process sections…"); *id.* at 36 ("Researched law on issue of whether a student has a liberty interest implicated by a university's expulsion of the student for disciplinary conduct; searched for cases where such an interest has been found; drafted introduction to supplemental brief requested by the Court…"); *id.* at 50 ("[D]iscussed [opposition to GMU's motion to strike John Doe status] with Allison Lansell via phone and email; emailed and spoke with Adam Zurbriggen about drafting footnote attacking George Mason's FOIA argument.").

Block billing presents a greater obstacle to reasonableness review on this record, but GMU concedes that such billing is "not egregious and non-purposeful." D. Opp. at 3. Moreover, the block billing is almost exclusively limited to the entries by associates Allison Lansell and Adam Zurbriggen, which is unsurprising since they performed the majority of the work on this case as a cost-saving measure. *See* Dillon Dec., ¶ 17. And unreasonable block billing by the lead partner on the case, Justin Dillon, is sparse. Thus, although a reduction is warranted, GMU's proposed 25% reduction across all requested hours is excessive. Rather, Lansell's and Zurbriggen's hours will be reduced by 10%, and Dillon's hours will be reduced by 5%.[14]

GMU also requests a 15% across the board reduction on the basis of overstaffing that resulted in duplicative or redundant billing. The record reflects that in Spring 2015, the primary responsibility for this lawsuit shifted from Matthew Kaiser and Allison Lansell to Justin Dillon and Adam Zurbriggen. This transition occurred before significant briefing began, which obviated the need for the new attorneys to familiarize themselves with legal authorities already mastered by a colleague.[15] After this transition, the time entries do not disclose any significant overlap in tasks that would warrant a broad 15% reduction in hours. To be sure, GMU's objection to charging for Zurbriggen's attendance at oral arguments in which he did not participate has some force. *See* D. Opp. at 5. Yet, on this record entries of this sort are easily identified and can be

---

[14] *See Route Triple Seven Ltd. P'ship*, 127 F. Supp. 3d at 621-22 (collecting cases for the proposition that "courts confronted with time records infected with lumping have reduced fee claims by percentages ranging from 10% to 20%"). Dillon's reduction falls below 10% because his entries cannot fairly be characterized as "infected with lumping." *Id.* at 621.

[15] For example, it appears that Dillon and Zurbriggen handled the research and briefing at the motion to dismiss stage, by which time Kaiser had ceased taking the lead in the case. *See* Dillon Dec., Ex. 1 at 41-43. To the extent overlap occurred, it appears that both Zurbriggen and Lansell worked on plaintiff's opposition to GMU's objection to the magistrate judge's order permitting pseudonymous litigation. *Id.* at 49-51. Such minor overlapping does not warrant a 15% reduction in hours across the board.

excised without substantial effort, such that an overall reduction is hours is not warranted. Thus, it is appropriate to subtract 23.10 hours from Zurbriggen's entries to account for his unnecessary attendance at hearings,[16] but no further reduction is warranted on this record.

In light of the reasonable rates and reasonable hours just discussed, the lodestar amount in this case is $277,864.45 for 984.69 attorney and paralegal hours, not including $667 in reasonable litigation expenses. The lodestar attorney's fee amount is displayed in the following chart:

| Attorney/Paralegal Name | Position | Reasonable Hours | Reasonable Hourly Rate | Reasonable Fee |
|---|---|---|---|---|
| Adam R. Zurbriggen | Associate | 593.06 | $245 | $145,299.70 |
| Justin Dillon | Partner | 200.36 | $385 | $77,138.60 |
| Allison Lansell | Associate | 124.47 | $245 | $30,495.15 |
| Matthew G. Kaiser | Partner | 38.00 | $445 | $16,910.00 |
| Christopher G. Muha | Associate | 19.7 | $325 | $6,402.50 |
| Rebecca S. LeGrand | Partner | 2.60 | $385 | $1001.00 |
| Jacob Clark | Paralegal | 6.5 | $95 | $617.50 |
| TOTAL | | 984.69 | | $277,864.45 |

With the lodestar figure now in hand, it is appropriate to consider whether a reduction is warranted for time spent on unsuccessful claims unrelated to successful ones. Plaintiff contends that no reduction is appropriate here because all claims, including the eight that were dismissed, relate to a common core of facts, namely the disciplinary proceedings that culminated in plaintiff's expulsion from GMU. Indeed, the Supreme Court has made it clear that "the court's rejection of…certain grounds [for relief] is not a sufficient reason for reducing a fee" where the "claims for relief involve a common core of facts" and "related legal theories." *Hensley*, 461 U.S. at 435. Instead, in such situations it is appropriate to "focus on the significance of the

---

[16] *See* Dillon Dec., Ex. 1 at 5 (3.5 hours for summary judgment hearing); *id.* at 20 (4 hours for status conference); *id.* at 38 (5 hours for motion to dismiss hearing); *id.* at 43 (6.5 hours for motion to dismiss hearing); Dillon Supp. Dec., Ex. 1 at 1 (4.1 hours for remedy hearing). These hours will be subtracted before applying the 10% reduction for block billing.

overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* In this lawsuit, every legal claim—including the eight unsuccessful ones—were clearly directed at the inadequacy of GMU's appellate proceedings in plaintiff's disciplinary case. Thus, plaintiff is correct that a reduction for unsuccessful claims is inappropriate, as the unsuccessful claims are related to the successful claims.

Finally, it is incumbent now to award some percentage of the lodestar amount based on the degree of plaintiff's success. Importantly, GMU does not appear to argue that any reduction from the lodestar is warranted based on plaintiff's failure to obtain all relief initially sought. Although plaintiff initially sought damages of $3,000,000 that he could not obtain due to qualified immunity, the parties agree that the heart of this lawsuit was always about the due process violation alleged and obtaining plaintiff's reinstatement at GMU. *See* D. Opp. at 6 (acknowledging that "the focus of the litigation revolved around the procedural due process claim"). There can be no doubt that plaintiff obtained substantial injunctive relief on his procedural due process claim; GMU was (i) directed to reinstate plaintiff, (ii) directed to remove all records reflecting his expulsion for misconduct, and (iii) enjoined from pursuing additional allegations by plaintiff's accuser unless those allegations were adjudicated within sixty days of the entry of final judgment. As such, plaintiff "obtained excellent results" and "his attorney[s] should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435.

### III.

For the foregoing reasons, an Order will issue (i) granting in part plaintiff's motions for fees and costs pursuant to § 1988 and (ii) awarding plaintiff an attorney's fee of $277,864.45 and costs of $667.00 for a total award of $278,531.45.

Alexandria, Virginia
June 21, 2016

T. S. Ellis, III
United States District Judge

11